Daniel J. O'Connor
Omar D. Galaria
**Baker & McKenzie LLP**
300 E. Randolph Street
Chicago, IL 60601
Telephone: +1 312 861 8000
Facsimile:  +1 312 925 7153
Daniel.O'Connor@bakermckenzie.com
Omar.Galaria@bakermckenzie.com

Todd G. Friedland (SBN 187022)
J. Gregory Dyer (SBN 218385)
**Stephens Friedland LLP**
4695 MacArthur Court, Suite 310
Newport Beach, CA 92660
Telephone: +1 949.468.3200
Facsimile: +1 949.468.3201
todd@sf-lawyers.com

Attorneys for Non-Party HiMax Imaging Corp.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASUS COMPUTER INTERNATIONAL, | **CASE NO.: CV13-02176 SJO (FFMx)** |
| | **Magistrate Frederick F. Mumm** |
| Plaintiff, | **Related Action Pending in the United States Court for the Northern District of California (3:12-cv-2099)** |
| v. | **DISCOVERY MATTER** |
| ROUND ROCK RESEARCH, LLC, | **DECLARATION OF DANIEL O'CONNOR** |
| Defendant. | Date:        May 14, 2013 |
| | Time:        10:00 a.m. |
| | Courtroom:   E |
| | Judge:       Frederick F. Mumm |

# DECLARATION OF DANIEL O'CONNOR

I, Daniel O'Connor, am an attorney with Baker & McKenzie LLP, located at 300 East Randolph Street, Chicago, Illinois. I am admitted to practice law in the State of Illinois. My *pro hac vice* application in the Central District of California is currently pending. I represent non-party Himax Imaging Corporation ("Himax Imaging"). The matters set forth in this declaration are based on my personal knowledge, and if called as a witness I could and would testify competently thereto. I hereby declare as follows:

1. Attached as **Exhibit 1** is a true and correct copy of Round Rock Research, LLC's ("Round Rock") Subpoena *Duces Tecum* that was served on Himax Imaging on or about January 7, 2013 (the "subpoena").

2. Attached as **Exhibit 2** is a true and correct copy of the Complaint for Declaratory Judgment of Patent Non-Infringement, Invalidity and Un-enforceability filed by ASUS Computer International against Round Rock, filed in the Northern District of California on April 26, 2012 (Case No. 12-cv-02099)(the "Underlying Action").

3. Attached as **Exhibit 3** is a true and correct copy of the Joint Case Management Statement filed by ASUS and Round Rock on February 26, 2013 in the Underlying Action.

4. Attached as **Exhibit 4** is a true and correct copy of the Case Management Order issued on September 26, 2012 in the Underlying Action.

5. Attached as **Exhibit 5** is a true and correct copy of an email I received on January 14, 2013 from Lauren Nowierski, counsel for Round Rock.

6. Attached as **Exhibit 6** is a true and correct copy of a letter dated January 21, 2013 that I sent to Lauren Nowierski objecting to the subpoena.

7. Attached as **Exhibit 7** is a true and correct copy of a letter dated January 31, 2013 that I sent to Lauren Nowierski requesting clarification on whether any Himax products were identified in Round Rock's infringement contentions.

2

8.    Attached as **Exhibit 8** is a is a true and correct copy of an email I received on February 5, 2013 from Lauren Nowierski.

9.    On February 12, 2013, Counsel for Round Rock and Himax Imaging conducted a meet and confer as a follow-up to the letter of January 31, 2013 (Ex. 7) and the email from Lauren Nowierski of February 5, 2013 (Ex. 8). During that call, counsel for Round Rock admitted that the Himax HM 2050 image sensor, or indeed any Himax product, is not identified as an "Accused Instrumentality" in the ICs that have been served by Round Rock in the underlying litigation. When informed of this fact, I advised counsel for Round Rock that I believed Round Rock was not entitled to take discovery from Himax unless and until Round Rock was allowed to amend its infringement contentions (ICs) to include identification of a Himax product, and on that basis I objected to the subpoena. In that call, counsel for Round Rock indicated that they learned about the Himax HM 2050 image sensor in an interrogatory answer they received from ASUS, apparently after they served their ICs, and that they were considering filing a motion for leave to amend their ICs to include the Himax HM2050 as an "Accused Instrumentality."

10.    Attached as **Exhibit 9** is a true and correct copy of an email I sent on February 21, 2013 to Lauren Nowierski confirming our discussion on February 12, 2013.

11.    Attached as **Exhibit 10** is a true and correct copy of an email I received on March 5, 2013 from Lauren Nowierski.

12.    Attached as **Exhibit 11** is a true and correct copy of an email I sent on March 11, 2013 to Lauren Nowierski.

13.    On March 12, 2013, I participated in another meet and confer phone call with counsel for Round Rock. During that call, counsel for Round Rock agreed to limit the Round Rock Subpoena to the Himax HM2050 image sensor. I asked Lauren Nowierski whether Round Rock would agreed to withdraw the subpoena without prejudice, in light of the fact that no Himax product is identified as an Accused

1  Instrumentality in Round Rock's ICs.  Counsel for Round Rock, indicated that she

2  would not agree to withdrawing the subpoena at this time.

3      14.    Attached as **Exhibit 12** is a true and correct of U.S, Patent No 6,765,276,

4  which issued on July 20, 1994,

5      I declare under penalty of perjury that the foregoing is true and correct.

6  Executed on Thursday, March 14, 2013, in Chicago, Illinois.

7

8

9

10      Daniel O'Connor

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

# EXHIBIT 1

AO 88B (Rev 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the

Central District of California

| | |
|---|---|
| ASUS COMPUTER INTERNATIONAL | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  3:12-cv-0299-WHA |
| ROUND ROCK RESEARCH LLC | ) |
| | ) (If the action is pending in another district, state where: |
| *Defendant* | ) Northern District of California  ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Himax Imaging Incorporated (Himax Imaging Corp.), 36 Discovery, Suite 270, Irvine, CA 92618;
Reg. Agent: Peggy Y. Chau, 28 Calais, Irvine, CA 92602

☑ *Production:* YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:  TransPerfect Translations | Date and Time: |
|---|---|
| 2049 Century Park East | 01/31/2013 10:00 am |
| Suite 310, Los Angeles, CA 90067 (tel: 310.286.2600) | |

☐ *Inspection of Premises:* YOU ARE COMMANDED to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  01-07-2013

CLERK OF COURT

OR _____
Signature of Clerk or Deputy Clerk                    Attorney's Signature

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*  Round Rock Research LLC
_____ , who issues or requests this subpoena, are:

Lauren M. Nowierski
Desmarais LLP
230 Park Avenue, New York, NY 10169,  (212) 351-3400

EXHIBIT 1

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 3:12-cv-0299-WHA

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)*

was received by me on *(date)*                    .

☐ I served the subpoena by delivering a copy to the named person as follows:

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

EXHIBIT 1

7

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

EXHIBIT 1

8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ASUS COMPUTER INTERNATIONAL, | § | |
| *Plaintiff* | § | |
| | § | |
| vs. | § | Civ. Action No. 3:12-cv-02099- |
| | § | WHA |
| ROUND ROCK RESEARCH, LLC, | § | |
| *Defendant* | § | JURY TRIAL DEMANDED |
| | § | |
| | § | |
| ROUND ROCK RESEARCH, LLC, | § | |
| | § | |
| *Counterclaim Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| ASUSTEK COMPUTER INC. AND ASUS | § | |
| COMPUTER INTERNATIONAL, | § | |
| | § | |
| *Counterclaim Defendants.* | § | |

### NOTICE OF SUBPOENA

PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of Civil

Procedure, Defendant Round Rock Research, LLC hereby gives notice that, by and through its

attorneys, it has or will serve the attached subpoena (Ex. A) in the above referenced action.

Dated: January 7, 2013                                  Respectfully submitted,

                                                        By: */s/ Bradford J. Black*
                                                        BLACK CHANG & HAMILL LLP

EXHIBIT 1

9

Bradford J. Black(SBN 252031)
bblack@bchllp.com
Peter H. Chang (SBN 241467)
pchang@bchllp.com
4 Embarcadero Center, Suite 1400
San Francisco, California 94111
Telephone: 415-813-6210
Facsimile: 415-813-6222

OF COUNSEL:
Paul A. Bondor
Jonas R. McDavit
Lauren M. Nowierski
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401
pbondor@desmaraisllp.com
jmcdavit@desmaraisllp.com
lnowierski@desmaraisllp.com

*Attorneys for Defendant
Round Rock Research, LLC*

EXHIBIT 1

## CERTIFICATE OF SERVICE

I hereby certify that on this January 7, 2013, copies of the Subpoena to Himax Imaging

Incorporated, were served on all required parties via electronic mail or regular U.S. mail.

John P. Schnurer
Cheng (Jack) Ko
Michael J. Engle
PERKINS COIE LLP
11988 El Camino Real, Suite 200
San Diego, CA 92130-3334
Tel: (858) 720-5700
JSchnurer@perkinscoie.com
Jko@perkinscoie.com
Mengle@perkinscoie.com
James C. Pistorino
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Tel: (650)838-4300
Jpistorino@perkinscoie.com

*Attorneys for Plaintiffs ASUSTeK Computer,
Inc. and ASUS Computer International.*

By: /s/ Lauren M. Nowierski

Lauren M. Nowierski
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401

EXHIBIT 1

## SCHEDULE A TO CIVIL SUBPOENA

### INTRODUCTION

For a statement of your obligation in producing documents under this subpoena, see Rule 45(d)(l) and (2) of the Federal Rules of Civil Procedure, which appears on the final page of the subpoena.

### DEFINITIONS AND INSTRUCTIONS

1. "Himax," "You," or "Your" means Himax Imaging Incorporated and all predecessors, subsidiaries, joint ventures, parents, affiliates, and other legal entities that are wholly or partially owned or controlled by Himax, either directly or indirectly, and including but not limited to *all* past or present directors, officers, agents, employees, consultants, attorneys, and others acting on behalf of these same entities.

2. As used herein, "Round Rock" means Round Rock Research, LLC.

3. As used herein, "Plaintiff" means ASUSTeK Computer, Inc. and ASUS Computer International.

4. As used herein, "this Action" means *ASUS Computer International v. Round Rock Research, LLC* and *Round Rock Research, LLC v. ASUSTeK Computer, Inc. and ASUS Computer International*, Civil Action No. 3:12-cv-02099-WHA, in the United States District Court for the Northern District of California.

5. As used herein, "Product" means any Himax image sensor, which You either manufacture(d), sell , sold, or offered to sell to Plaintiff since 2005, or which Plaintiff has in any other way procured through You directly or via any other entity, including but not limited to the Himax HM2050 image sensor and the RTS520D PC camera application controller.

6. "Person" means any natural person or individual, and any and *all* legal entities, including without limitation, corporations, companies, firms, partnerships, joint ventures, proprietorships, associations, governmental bodies or agencies, or other form of business enterprise.

7. As used herein, "communication" means any transmission of information by one or more persons and/or between two or more persons by any means, including telephone conversations, letters, telegrams, teletypes, telexes, telecopies, electronic mail, other computer linkups, written memoranda, and face-to-face conversations.

8. As used herein, "and" and "or" shall be construed conjunctively and disjunctively, so as to acquire the broadest possible meaning.

9. The term "any" includes "all," and the term "all" includes "any," and the terms "any" and "all" shall each be construed to mean "each and every," so as to acquire the broadest possible meaning.

EXHIBIT 1

12

10. As used herein, "include" and "including" shall be construed to mean "without limitation," so as to acquire the broadest possible meaning.

11. The singular of any term includes the plural of that term, and the plural includes the singular.

12. The singular and masculine form of a noun or pronoun shall embrace, and shall be read and applied as, the plural or the feminine or neuter, as the particular context makes appropriate and to give the noun or pronoun the broadest possible meaning.

13. As used herein, "relating to" means, without limitation, identifying, describing, discussing, concerning, assessing, stating, reflecting, constituting, containing, embodying, tending to support or refute, or referring directly or indirectly to the particular subject matter identified.

14. The term "concerning" means identifying, referring to, concerning, regarding evidencing, demonstrating, summarizing, reflecting, constituting, containing, embodying, mentioning, pertaining to, commenting upon, connected with, discussing, describing, analyzing, showing, comprising, or relating to in any relevant way to a particular subject, in whole or in part, either directly or indirectly.

15. The document requests herein shall be deemed to include any and all relevant documents within the possession, custody or control of Himax, including documents located in the files of any and all past and present association members, subsidiaries, parents, sisters, partnerships, directors, officers, agents, representatives, employees, attorneys, and accountants of Himax.

16. "Document" shall have the broadest meaning and scope ascribed under Rule 34 of the Federal Rules of Civil Procedure, and include all tangible things which come within the meaning of the terms "writings and recordings"" as used in Federal Rule of Evidence 1001 and all electronically stored information. A draft or non-identical copy is a separate document within the meaning of this term.

17. If, after conducting a reasonable investigation, a full answer cannot be provided for any request for the production of documents, state that such is the case and answer to the fullest extent possible, stating what responsive documents or information are available, what documents or information cannot be provided, why the documents or information are unavailable, and what efforts were made to obtain the unavailable documents or information.

18. If any of the documents requested herein are no longer in your possession, custody or control, you shall identify each such requested document by date, type of document, person(s) from whom sent, person(s) to whom sent, and person(s) receiving copies, and to provide a summary of its pertinent contents.

19. If any document responsive to these requests has been destroyed, describe the content of such document, the location of any copies of such document, and the date of such destruction.

EXHIBIT 1

## DOCUMENTS TO BE PRODUCED

1.  Documents sufficient to show all sales of any of the Products to the Plaintiff, or procurement of any of the Products by the Plaintiff from You, including but not limited to sales records, shipment records, and bills of lading.

2.  Documents sufficient to illustrate and explain the manufacture or fabrication of any of the Products, including but not limited to manuals, schematics, user guides, technical specifications, technical reports, and CMP recipes.

3.  Documents sufficient to show the operation and use of any of the Products, including but not limited to manuals, schematics, user guides, technical specifications, and technical reports.

4.  Documents sufficient to show the architecture of the Products sold to Plaintiff.

5.  Documents sufficient to identify all names of all the Products, including internal working names, external names, commercially used names, and code names.

6.  Documents sufficient to identify the locations relating to the design, assembly, fabrication, and manufacture of any of the Products.

7.  Documents sufficient to show the process by which any materials, ingredients, or components (including but not limited to any wafers or semiconductors) are employed, used, or assembled in the manufacturing or fabrication process of any Product, including but not limited to any image sensor.

EXHIBIT 1

14

8.  Documents sufficient to show the training of any Person involved in the process of manufacturing the Products, including but not limited to the processes of chemical mechanical polishing (CMP), dry etching, metals deposition, any type of chemical vapor deposition (CVD), photolithography, ion implantation, plasma deposition, and ion milling.

9.  Documents sufficient to identify the manufacturers of any equipment used in any process relating to the manufacture, assembly, or fabrication of any Product (including any image sensor), including but not limited to the processes of CMP, dry etching, metals deposition, any type of CVD, photolithography, ion implantation, plasma deposition, and ion milling.

10. All communications between Plaintiff and You relating to Round Rock.

11. All communications between Plaintiff and You relating to the Products.

12. All communications between Plaintiff and You relating to this Action.

13. Documents and communications regarding any request for indemnification by Plaintiff in connection with patent infringement claims asserted by Round Rock.

14. Documents sufficient to show Your marketing, advertising, or promotion of the Products.

15. All documents relating to market demand for the Products including, but not limited to, market studies, technical reports, consultant reports, surveys, and any reports or studies relating to customer demand of any Product features or decisions to include or exclude any such features for any Product.

EXHIBIT 1

15

# EXHIBIT 2



1   John P. Schnurer, Bar No. 185725
    JSchnurer@perkinscoie.com
2   Cheng (Jack) Ko, Bar No. 244630
    JKo@perkinscoie.com
3   Michael J. Engle, Bar No. 259476
    MEngle@perkinscoie.com
4   PERKINS COIE LLP
    11988 El Camino Real, Suite 200
5   San Diego, CA 92130-3334
    Telephone: 858.720.5700
6   Facsimile: 858.720.5799

7   James C. Pistorino, Bar No. 226496
    JPistorino@perkinscoie.com
8   PERKINS COIE LLP
    3150 Porter Drive
9   Palo Alto, CA 94304-1212
    Telephone: 650.838.4300
10  Facsimile: 650.838.4350

Filed

APR 26 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

11  Attorneys for Plaintiff ASUS Computer International

12

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15

16  ASUS COMPUTER INTERNATIONAL,    CV 12-02099    Case No.

17              Plaintiff,          COMPLAINT FOR
                                    DECLARATORY JUDGMENT OF
18       v.                         PATENT NON-INFRINGEMENT,
                                    INVALIDITY, AND
19  ROUND ROCK RESEARCH, LLC,       UNENFORCEABILITY

20              Defendant.          DEMAND FOR JURY TRIAL

21

22

23       Plaintiff ASUS Computer International hereby pleads the following claims for

24  Declaratory Judgment against Defendant Round Rock Research, LLC, and alleges as follows:

25                              PARTIES

26       1.   Plaintiff ASUS Computer International ("ASUS") is a California corporation

27  having its principal place of business and corporate headquarters at 800 Corporate Way, Fremont,

28  California 94539;

78864-0001/LEGAL22374122.1        EXHIBIT 2                          COMPLAINT

17

1    2.    ASUS sells a variety of system-level consumer electronics products in the United

2    States, including desktop computers, notebook computers, tablet PCs, LCD monitors, and cell

3    phones under the ASUS brand.

4    3.    Upon information and belief, Defendant Round Rock Research, LLC ("Round

5    Rock") is a Delaware limited liability company with its principal place of business located at

6    26 Deer Creek Lane, Mount Kisco, New York 10549.

7    4.    Upon information and belief, Round Rock is a patent licensing company which,

8    among other things, attempts to license its portfolio of issued patents and pending applications

9    throughout the United States, Europe, and Asia. Upon information and belief, in pursuit of its

10   licensing campaign Round Rock conducts business throughout the United States personally and

11   through its agents, and actively transacts business in this judicial district in particular, including

12   by attempting to license and litigate its patent portfolio.

13                        JURISDICTION AND VENUE

14   5.    This action arises under the laws of the United States, in particular the Patent Act

15   under Title 35 of the United States Code.

16   6.    The Court has subject matter jurisdiction over this action and the matters pleaded

17   herein under 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the Federal

18   Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the Patent Act of the United States, 35

19   U.S.C. § 101 et seq.

20   7.    An actual controversy exists between Plaintiff and Defendant through Round

21   Rock's assertion of its patent rights based on certain of ASUS' ongoing activities. In particular,

22   Round Rock contends that some of ASUS' consumer electronics products infringe one or more of

23   Round Rock's patents. ASUS contends that it has the right to make, use, sell, and/or offer to sell

24   its products and services in the United States, or import them into the United States unhampered

25   by Round Rock.

26   8.    The Court has personal jurisdiction over Round Rock because, among other things,

27   Round Rock has established minimum contacts with the forum such that the exercise of

28

1  jurisdiction over Round Rock will not offend traditional notions of fair play and substantial

2  justice.

3        9.      Upon information and belief, in pursuit of its licensing campaign Round Rock

4  conducts business throughout the United States, and actively transacts business in this judicial

5  district in particular, including by attempting to license and litigate its patent portfolio.

6        10.     The Court has specific jurisdiction over Round Rock because the cause of action

7  arises directly from Round Rock's contacts with California. Round Rock contacted Plaintiff

8  ASUS, a California corporation, by sending a demand letter directed to ASUS' Fremont,

9  California office on or about March 30, 2011. The March 30, 2011 demand letter asserted that

10  ASUS' "products incorporate and use features and functionality covered by various Round Rock

11  patents" and ASUS "therefore infringes these patents, either directly or indirectly." In the March

12  30, 2011 letter, Round Rock appointed IP Value, a company headquartered in Mountain View,

13  California that actively conducts business in California, as "its agent to commercialize Round

14  Rock's patents and other intellectual property rights worldwide." Upon information and belief,

15  Round Rock's Vice President of Licensing, Mr. Gerard A. deBlasi, served as the Executive Vice

16  President at IP Value from 2005 to 2011 and he currently serves on IP Value's Board of

17  Directors.

18        11.     Round Rock's "agent" IP Value contacted ASUS again on or about April 11, 2011

19  by sending a letter directed to ASUS' Fremont, California office. The April 11, 2011 letter

20  affirmed that "IP VALUE Management, Inc. has been appointed by RRR [Round Rock Research]

21  as its agent to license the RRR patents" and asked to schedule a meeting with ASUS to discuss

22  these patents.

23        12.     Over the next year, Round Rock has continued to assert its patents against ASUS

24  through a series of additional letters, emails, and presentations, including a meeting between

25  ASUS and Round Rock in Palo Alto, California on April 5, 2012. That meeting was attended by

26  Gerard deBlasi of Round Rock and Paul Riley of IP Value.

27        13.     The Court recently found personal jurisdiction over Round Rock in the Northern

28  District of California based on nearly identical circumstances and at least two of the same patents-

Case 2:13-cv-02176-SJO-FFM   Document 21   Filed 04/15/13   Page 20 of 83   Page ID #:237

April 26, 2012  Case3:12-cv-02099-WHA   Document1   Filed04/26/12   Page4 of 17      4
Diversified Legal Services, Inc.

1    in-suit. *SanDisk Corp. v. Round Rock Research LLC*, No. 3:11-cv-05243-RS, D.I. 60, Order

2    Denying Motion to Dismiss for Lack of Jurisdiction (N.D. Cal. Feb. 16, 2012). In that case, the

3    Court found that "Round Rock did not merely send letters into California informing SanDisk of

4    suspected infringement. Rather, it embarked on a course of conduct designed with the goal of

5    ultimately persuading SanDisk to enter into licensing agreements, which is, not coincidentally,

6    Round Rock's primary business. To that end, Round Rock hired a company [IP Value] based in

7    California to perform the necessary analyses and to carry out the negotiations." *Id.* at 4. "Round

8    Rock's sole business lies in licensing its extensive technology portfolio. It hired an intermediary

9    [IP Value] based in California with the undisputed intent that negotiations between that

10    intermediary and SanDisk would take place in this state. Even assuming that Round Rock did not

11    particularly care where IPValue performed the necessary preparatory work for those negotiations,

12    it certainly could have foreseen that some substantial part of it might take place in California, as it

13    undisputedly did. Under all these circumstances, there is nothing unfair about subjecting Round

14    Rock to specific jurisdiction in this forum." *Id.* at 6.

15    14.    Round Rock also filed counterclaims for patent infringement in the *SanDisk* case,

16    thus utilizing the Northern District of California to further its patent licensing and litigation

17    efforts. *SanDisk*, No. 3:11-cv-05243-RS, D.I. 70 (N.D. Cal. Apr. 5, 2012). Round Rock has

18    asserted SanDisk infringes at least two of the same patents-in-suit, U.S. Patent Nos. 6,570,791

19    and 7,021,520.

20    15.    Upon information and belief, Round Rock's licensing "agent" IP Value is

21    headquartered in Mountain View, California and employs some or all of its senior executives, at

22    least four licensing executives, and an unknown number of analysts and other employees in its

23    California office. Upon information and belief, IP Value has been doing business in California by

24    actively soliciting patent licenses on Round Rock's behalf from companies located in California.

25    Upon information and belief, Round Rock's sole business is licensing and litigating its patent

26    portfolio yet Round Rock has only three employees, so IP Value performs all or a substantial

27    portion of Round Rock's business.

28

16. Upon information and belief and according to Round Rock's website, Round Rock claims to have granted licenses or covenants not to sue to Apple, Sony, Micron, Samsung, Nokia, HTC, IBM, and LG. Upon information and belief, Apple is a California corporation with its headquarters located at 1 Infinite Loop, Cupertino, California 95014. Upon information and belief, Round Rock's employees or agents have traveled to Apple, Inc.'s headquarters in Cupertino, California one or more times during license negotiations. Upon further information and belief, Round Rock's licensees Sony, Micron, Samsung, Nokia, HTC, IBM, and LG all conduct business in California and in this judicial district in particular.

17. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## GENERAL ALLEGATIONS

18. This action involves U.S. Patent Nos. 6,570,791, titled "Flash Memory with DDRAM Interface" ("the '791 patent") (attached as Exhibit A); 6,765,276, titled "Bottom Antireflection Coating Color Filter Process for Fabricating Solid State Image Sensors" ("the '276 patent") (attached as Exhibit B); 6,845,053, titled "Power Throughput Adjustment in Flash Memory" ("the '053 patent") (attached as Exhibit C); 6,930,949, titled "Power Savings in Active Standby Mode" ("the '949 patent") (attached as Exhibit E); 7,021,520, titled "Stacked Chip Connection Using Stand Off Stitch Bonding" ("the '520 patent") (attached as Exhibit E); and 7,279,353, titled "Passivation Planarization" ("the '353 patent") (attached as Exhibit F) (collectively "the patents-in-suit").

19. ASUS sells a variety of system-level consumer electronics products in the U.S., including desktop computers, notebook computers, tablet PCs, LCD monitors, and cell phones. The components of these system-level products are supplied by various companies such as SanDisk and Samsung.

20. Upon information and belief, Round Rock's patent portfolio was acquired in 2009 from Micron Technology, Inc. ("Micron"), a semiconductor component manufacturer. Upon information and belief, Round Rock's patent portfolio is focused on component-level technologies, such as semiconductor processing, DRAM, computers, microprocessors, packaging, flash, battery, and power management, which is different from ASUS' main business of selling

1   system-level consumer electronics products. Upon further information and belief, Round Rock

2   previously began a campaign to license its mostly component-level patent portfolio against

3   component manufacturers, which resulted in many of ASUS' suppliers being licensed to Round

4   Rock's patent portfolio. Upon further information and belief, in 2010 Round Rock began a

5   campaign to license its mostly component-level patent portfolio, no longer targeting the primarily

6   responsible component manufacturers, but rather targeting the buyers/customers of those

7   components, such as ASUS, despite having already licensed many of ASUS' suppliers.

8          21.    Upon information and belief, in execution of its campaign, Round Rock wrote a

9   letter on or about March 30, 2011 to ASUS in Fremont, California, asserting that certain of

10   ASUS' products "incorporate and use features and functionality covered by various Round Rock

11   patents." The March 30, 2011 letter contained a table which listed, among other things, the '949

12   patent and the ASUS products Round Rock alleged applied to that patent.

13          22.    ASUS was without knowledge of any of the patents listed in the March 30, 2011

14   letter prior to receiving the letter.

15          23.    On or about April 14, 2011, Mr. Paul Riley of IP Value wrote another letter to

16   ASUS in Fremont, California, asking to schedule a meeting with ASUS to discuss the Round

17   Rock patents.

18          24.    Upon information and belief, Round Rock met with ASUS on or about June 9,

19   2011, to discuss the purported value of Round Rock's portfolio of patents and pending

20   applications. Upon information and belief, during the June 9, 2011 meeting, Round Rock

21   demanded licensing and royalty payments from ASUS that were not fair and reasonable,

22   including because Round Rock's portfolio is more related to component suppliers than ASUS'

23   core business of consumer electronics products. The June 9, 2011 presentation identified at least

24   four of the patents-in-suit, including the '276, '949, '520, and '353 patents.

25          25.    ASUS was without knowledge of any of the additional patents presented in the

26   June 9, 2011 meeting prior to attending the meeting.

27          26.    Upon information and belief, in execution of the campaign to license its mostly

28   component-level patent portfolio, on October 14, 2011, Round Rock sued ASUS and its parent

1    ASUSTeK Computer Inc. in the U.S. District Court for the District of Delaware (Civil Action No.
2    1:11cv978) ("Delaware Action") claiming that one or more claims of nine other patents not at
3    issue in this case were being infringed by certain of ASUS' products and/or activities.

4         27.    Upon information and belief, in further execution of this campaign, on October 14,
5    2011, Round Rock also sued Dell, Inc., another system-level product manufacturer and seller, in
6    the U.S. District Court for the District of Delaware (Civil Action No. 1:11cv976) asserting the
7    same patents as in the Delaware Action against ASUS.

8         28.    On December 5, 2011, Round Rock sent a letter to ASUS with a copy to IP Value
9    that identified the '053 patent and various products of ASUS that Round Rock alleged were
10   infringed by the '053 patent.

11        29.    On December 6, 2011, Round Rock amended its complaint against Dell and added
12   the '053 patent to its infringement contentions against Dell.

13        30.    On December 6, 2011, Round Rock amended its complaint against ASUS in the
14   Delaware Action and added an additional U.S. patent to its infringement contentions against
15   ASUS.

16        31.    On December 23, 2011, ASUS filed a declaratory judgment action in the Northern
17   District of California against Round Rock on the ten patents asserted in the Delaware Action
18   (none of which overlap with the patents-in-suit of this case), and seeking indemnification and
19   defense costs from certain of ASUS' suppliers. *ASUSTeK Computer Inc. v. Round Rock
20   Research, LLC*, No. 4:11-cv-6636-CW, D.I. 1 (N.D. Cal. Dec. 23, 2011).

21        32.    Despite the ongoing litigation in the Northern District of California and the
22   District of Delaware, despite Round Rock's patents being primarily focused on components rather
23   than systems, and despite Round Rock knowing that many of ASUS' suppliers are licensed,
24   Round Rock has continued to assert its patent portfolio, including the patents-in-suit, against
25   ASUS.

26        33.    On March 7, 2012, Round Rock provided a presentation that identified at least the
27   '791, '053, and '520 patents.

28

78864-0001/LEGAL22374122.f          EXHIBIT 2                          COMPLAINT

23

Case 2:13-cv-02176-SJO-FFM   Document 21   Filed 04/15/13   Page 24 of 83   Page ID #:241

April 26, 2012    Case 3:12-cv-02099-WHA   Document1   Filed04/26/12   Page8 of 17        8
                                          Diversified Legal Services, Inc.

1    34.   On April 5, 2012, ASUS and Round Rock met in Palo Alto, California to discuss

2    Round Rock's lawsuits and patent portfolio.

3    35.   On April 5, 2012, Round Rock filed counterclaims for patent infringement in the

4    Northern District of California against SanDisk that included at least the '791 and '520 patents,

5    *SanDisk Corp. v. Round Rock Research LLC*, No. 3:11-cv-05243-RS, D.I. 70 (N.D. Cal. Apr. 5,

6    2012). Thus, at least two of the patents-in-suit are already before the Northern District of

7    California.

8    36.   Upon information and belief, the asserted patents are focused on specific

9    components supplied by third-party suppliers or a substantial portion of the claimed inventions is

10   allegedly being infringed by such components. Because ASUS sells system-level consumer

11   electronic products, not the allegedly infringing components, ASUS' suppliers are the real

12   parties-in-interest.

13   37.   Upon information and belief, Micron, the original owner of Round Rock's patent

14   portfolio, has a history of licensing its patents to component-level manufacturers. For example,

15   upon information and belief, Micron licensed its patent portfolio to SanDisk on or about

16   December 20, 2002.

17   38.   Upon information and belief and according to Round Rock's own website, Round

18   Rock has also licensed its patent portfolio to, among others, Samsung and Micron, both of whom

19   are or were component suppliers for ASUS' products. Therefore, the patents-in-suit are

20   unenforceable to the extent that any allegedly infringing products are supplied, directly or

21   indirectly, to ASUS by suppliers who have an express or implied license to one or more of the

22   patents-in-suit, and/or unenforceable under the doctrine of patent exhaustion.

23   39.   ASUS contends that it has the right to make, use, sell, and/or offer to sell its

24   products and services in the United States, or import them into the United States unhampered by

25   Round Rock. ASUS denies that its products infringe any valid and enforceable claim of the

26   patents-in-suit. ASUS also contends that the patents-in-suit are invalid under the Patent Act, 35

27   U.S.C. § 101, *et seq.*, including, but not limited to, sections 102, 103 and 112, and unenforceable

28   due to express or implied licenses and/or patent exhaustion. ASUS thus seeks a declaration that it

COMPLAINT

Case 2:13-cv-02176-SJO-FFM   Document 21   Filed 04/15/13   Page 25 of 83   Page ID #:242

April 26, 2012   Case3:12-cv-02099-WHA   Document1   Filed04/26/12   Page9 of 17      9
Diversified Legal Services, Inc.

1  does not infringe the patents-in-suit, that the patents-in-suit are invalid, and/or that the patents-in-
2  suit are unenforceable.

3      40.    At least two of the patents-in-suit (the '791 and '053 patents) have all named
4  inventors listed as residing in the Northern District of California.

INTRADISTRICT ASSIGNMENT & RELATED CASES

6      41.    This action for a declaratory judgment of non-infringement, invalidity and
7  unenforceability of patents is related to *SanDisk Corp. v. Round Rock Research LLC*, No. 3:11-
8  cv-05243-RS (N.D. Cal.), which is currently pending before Judge Richard Seeborg in the
9  Northern District of California. The *SanDisk* case and this case share the same defendant (Round
10 Rock) and at least two patents-in-suit: the '791 and '520 patents.

11     42.    This action is also related to *ASUSTeK Computer Inc. v. Round Rock Research,*
12 *LLC*, No. 4:11-cv-6636-CW (N.D. Cal.), which is currently pending before Judge Claudia Wilken
13 in the Northern District of California. While the patents-in-suit differ, the *ASUSTeK* case and this
14 case both share overlapping parties, overlapping facts, and overlapping accused products.

FIRST CLAIM FOR RELIEF
Declaratory Relief Regarding Non-Infringement of the '791 Patent

17     43.    ASUS incorporates herein the allegations of paragraphs 1-42.
18     44.    An actual and justiciable controversy exists between ASUS and Round Rock as to
19 the non-infringement of the '791 patent, as set forth above.
20     45.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*,
21 ASUS requests the declaration of the Court that ASUS does not infringe and has not infringed,
22 either literally or under the doctrine of equivalents, either directly or indirectly, any valid and
23 enforceable claim of the '791 patent.

SECOND CLAIM FOR RELIEF
Declaratory Relief Regarding Invalidity of the '791 Patent

26     46.    ASUS incorporates herein the allegations of paragraphs 1-42.
27     47.    An actual and justiciable controversy exists between ASUS and Round Rock as to
28 the invalidity of the '791 patent, as set forth above.

Case 2:13-cv-02176-SJO-FFM   Document 21   Filed 04/15/13   Page 26 of 83   Page ID #:243

April 26, 2012    Case3:12-cv-02099-WHA   Document1   Filed04/26/12   Page10 of 17    10
Diversified Legal Services, Inc.

48.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*,
ASUS requests the declaration of the Court that the '791 patent is invalid under the Patent Act, 35
U.S.C. § 101 *et seq.*, including, but not limited to, sections 102, 103, and 112.

### THIRD CLAIM FOR RELIEF

#### Declaratory Relief Regarding Unenforceability of the '791 Patent
#### Including Due to License and/or Exhaustion

49.    ASUS incorporates herein the allegations of paragraphs 1-42.

50.    An actual and justiciable controversy exists between ASUS and Round Rock as to
the unenforceability of the '791 patent, as set forth above.

51.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*,
ASUS requests the declaration of the Court that the '791 patent is unenforceable to the extent that
any allegedly infringing products are supplied, directly or indirectly, to ASUS by suppliers who
have or had express licenses to the '791 patent.

52.    ASUS further requests the declaration of the Court that the '791 patent is
unenforceable to the extent that any allegedly infringing products are supplied, directly or
indirectly, to ASUS by suppliers who have implied licenses to the '791 patent.

53.    ASUS further requests the declaration of the Court that the '791 patent is
unenforceable under the doctrine of patent exhaustion.

### FOURTH CLAIM FOR RELIEF

#### Declaratory Relief Regarding Non-Infringement of the '276 Patent

54.    ASUS incorporates herein the allegations of paragraphs 1-42.

55.    An actual and justiciable controversy exists between ASUS and Round Rock as to
the non-infringement of the '276 patent, as set forth above.

56.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*,
ASUS requests the declaration of the Court that ASUS does not infringe and has not infringed,
either literally or under the doctrine of equivalents, either directly or indirectly, any valid and
enforceable claim of the '276 patent.

78364-0001/LEGAL22374123.1                    EXHIBIT 2                        COMPLAINT

26

Case 2:13-cv-02176-SJO-FFM  Document 21  Filed 04/15/13  Page 27 of 83  Page ID #:244

April 26, 2012
Case3:12-cv-...099-WHA  Document1  Filed04/26/1...  Page11 of 17    11
Diversified Legal Services, Inc.

1    <u>FIFTH CLAIM FOR RELIEF</u>

2    **Declaratory Relief Regarding Invalidity of the '276 Patent**

3        57.    ASUS incorporates herein the allegations of paragraphs 1-42.

4        58.    An actual and justiciable controversy exists between ASUS and Round Rock as to

5    the invalidity of the '276 patent, as set forth above.

6        59.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*,

7    ASUS requests the declaration of the Court that the '276 patent is invalid under the Patent Act, 35

8    U.S.C. § 101 *et seq.*, including, but not limited to, sections 102, 103, and 112.

9    <u>SIXTH CLAIM FOR RELIEF</u>

10   **Declaratory Relief Regarding Unenforceability of the '276 Patent**

11   **Including Due to License and/or Exhaustion**

12       60.    ASUS incorporates herein the allegations of paragraphs 1-42.

13       61.    An actual and justiciable controversy exists between ASUS and Round Rock as to

14   the unenforceability of the '276 patent, as set forth above.

15       62.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*,

16   ASUS requests the declaration of the Court that the '276 patent is unenforceable to the extent that

17   any allegedly infringing products are supplied, directly or indirectly, to ASUS by suppliers who

18   have or had express licenses to the '276 patent.

19       63.    ASUS further requests the declaration of the Court that the '276 patent is

20   unenforceable to the extent that any allegedly infringing products are supplied, directly or

21   indirectly, to ASUS by suppliers who have implied licenses to the '276 patent.

22       64.    ASUS further requests the declaration of the Court that the '276 patent is

23   unenforceable under the doctrine of patent exhaustion.

24   <u>SEVENTH CLAIM FOR RELIEF</u>

25   **Declaratory Relief Regarding Non-Infringement of the '053 Patent**

26       65.    ASUS incorporates herein the allegations of paragraphs 1-42.

27       66.    An actual and justiciable controversy exists between ASUS and Round Rock as to

28   the non-infringement of the '053 patent, as set forth above.

Case 2:13-cv-02176-SJO-FFM   Document 21   Filed 04/15/13   Page 28 of 83   Page ID #:245

April 26, 2012 Case3:12-cv-02099-WHA   Document1   Filed04/26/12   Page12 of 17    12
iversified Legal Services, Inc.

1      67.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*,

2  ASUS requests the declaration of the Court that ASUS does not infringe and has not infringed,

3  either literally or under the doctrine of equivalents, either directly or indirectly, any valid and

4  enforceable claim of the '053 patent.

5                        EIGHTH CLAIM FOR RELIEF

6          Declaratory Relief Regarding Invalidity of the '053 Patent

7      68.    ASUS incorporates herein the allegations of paragraphs 1-42.

8      69.    An actual and justiciable controversy exists between ASUS and Round Rock as to

9  the invalidity of the '053 patent, as set forth above.

10     70.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*,

11 ASUS requests the declaration of the Court that the '053 patent is invalid under the Patent Act, 35

12 U.S.C. § 101 *et seq.*, including, but not limited to, sections 102, 103, and 112.

13                       NINTH CLAIM FOR RELIEF

14       Declaratory Relief Regarding Unenforceability of the '053 Patent

15            Including Due to License and/or Exhaustion

16     71.    ASUS incorporates herein the allegations of paragraphs 1-42.

17     72.    An actual and justiciable controversy exists between ASUS and Round Rock as to

18 the unenforceability of the '053 patent, as set forth above.

19     73.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*,

20 ASUS requests the declaration of the Court that the '053 patent is unenforceable to the extent that

21 any allegedly infringing products are supplied, directly or indirectly, to ASUS by suppliers who

22 have or had express licenses to the '053 patent.

23     74.    ASUS further requests the declaration of the Court that the '053 patent is

24 unenforceable to the extent that any allegedly infringing products are supplied, directly or

25 indirectly, to ASUS by suppliers who have implied licenses to the '053 patent.

26     75.    ASUS further requests the declaration of the Court that the '053 patent is

27 unenforceable under the doctrine of patent exhaustion.

28

Case 2:13-cv-02176-SJO-FFM    Document 21    Filed 04/15/13    Page 29 of 83    Page ID #:246

Case3:12-cv-_099-WHA    Document1    Filed04/26/__    Page13 of 17    13
April 26, 2012                    Diversified Legal Services, Inc.

1                 TENTH CLAIM FOR RELIEF

2        Declaratory Relief Regarding Non-Infringement of the '949 Patent

3          76.     ASUS incorporates herein the allegations of paragraphs 1-42.

4          77.     An actual and justiciable controversy exists between ASUS and Round Rock as to

5 the non-infringement of the '949 patent, as set forth above.

6          78.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*,

7 ASUS requests the declaration of the Court that ASUS does not infringe and has not infringed,

8 either literally or under the doctrine of equivalents, either directly or indirectly, any valid and

9 enforceable claim of the '949 patent.

10               ELEVENTH CLAIM FOR RELIEF

11        Declaratory Relief Regarding Invalidity of the '949 Patent

12          79.     ASUS incorporates herein the allegations of paragraphs 1-42.

13          80.     An actual and justiciable controversy exists between ASUS and Round Rock as to

14 the invalidity of the '949 patent, as set forth above.

15          81.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*,

16 ASUS requests the declaration of the Court that the '949 patent is invalid under the Patent Act, 35

17 U.S.C. § 101 *et seq.*, including, but not limited to, sections 102, 103, and 112.

18               TWELFTH CLAIM FOR RELIEF

19        Declaratory Relief Regarding Unenforceability of the '949 Patent

20            Including Due to License and/or Exhaustion

21          82.     ASUS incorporates herein the allegations of paragraphs 1-42.

22          83.     An actual and justiciable controversy exists between ASUS and Round Rock as to

23 the unenforceability of the '949 patent, as set forth above.

24          84.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*,

25 ASUS requests the declaration of the Court that the '949 patent is unenforceable to the extent that

26 any allegedly infringing products are supplied, directly or indirectly, to ASUS by suppliers who

27 have or had express licenses to the '949 patent.

28

1       85.   ASUS further requests the declaration of the Court that the '949 patent is

2   unenforceable to the extent that any allegedly infringing products are supplied, directly or

3   indirectly, to ASUS by suppliers who have implied licenses to the '949 patent.

4       86.   ASUS further requests the declaration of the Court that the '949 patent is

5   unenforceable under the doctrine of patent exhaustion.

6   **THIRTEENTH CLAIM FOR RELIEF**

7   **Declaratory Relief Regarding Non-Infringement of the '520 Patent**

8       87.   ASUS incorporates herein the allegations of paragraphs 1-42.

9       88.   An actual and justiciable controversy exists between ASUS and Round Rock as to

10   the non-infringement of the '520 patent, as set forth above.

11       89.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*,

12   ASUS requests the declaration of the Court that ASUS does not infringe and has not infringed,

13   either literally or under the doctrine of equivalents, either directly or indirectly, any valid and

14   enforceable claim of the '520 patent.

15   **FOURTEENTH CLAIM FOR RELIEF**

16   **Declaratory Relief Regarding Invalidity of the '520 Patent**

17       90.   ASUS incorporates herein the allegations of paragraphs 1-42.

18       91.   An actual and justiciable controversy exists between ASUS and Round Rock as to

19   the invalidity of the '520 patent, as set forth above.

20       92.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*,

21   ASUS requests the declaration of the Court that the '520 patent is invalid under the Patent Act, 35

22   U.S.C. § 101 *et seq.*, including, but not limited to, sections 102, 103, and 112.

23   **FIFTEENTH CLAIM FOR RELIEF**

24   **Declaratory Relief Regarding Unenforceability of the '520 Patent**

25   **Including Due to License and/or Exhaustion**

26       93.   ASUS incorporates herein the allegations of paragraphs 1-42.

27       94.   An actual and justiciable controversy exists between ASUS and Round Rock as to

28   the unenforceability of the '520 patent, as set forth above.

Case 2:13-cv-02176-SJO-FFM  Document 21  Filed 04/15/13  Page 31 of 83  Page ID #:248

April 26, 2012 Case3:12-cv-099-WHA  Document1  Filed04/26/...  Page15 of 17    15
Diversified Legal Services, Inc.

1       95.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*,

2    ASUS requests the declaration of the Court that the '520 patent is unenforceable to the extent that

3    any allegedly infringing products are supplied, directly or indirectly, to ASUS by suppliers who

4    have or had express licenses to the '520 patent.

5       96.     ASUS further requests the declaration of the Court that the '520 patent is

6    unenforceable to the extent that any allegedly infringing products are supplied, directly or

7    indirectly, to ASUS by suppliers who have implied licenses to the '520 patent.

8       97.     ASUS further requests the declaration of the Court that the '520 patent is

9    unenforceable under the doctrine of patent exhaustion.

10                        SIXTEENTH CLAIM FOR RELIEF

11              Declaratory Relief Regarding Non-Infringement of the '353 Patent

12       98.     ASUS incorporates herein the allegations of paragraphs 1-42.

13       99.     An actual and justiciable controversy exists between ASUS and Round Rock as to

14    the non-infringement of the '353 patent, as set forth above.

15       100.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*,

16    ASUS requests the declaration of the Court that ASUS does not infringe and has not infringed,

17    either literally or under the doctrine of equivalents, either directly or indirectly, any valid and

18    enforceable claim of the '353 patent.

19                        SEVENTEENTH CLAIM FOR RELIEF

20              Declaratory Relief Regarding Invalidity of the '353 Patent

21       101.    ASUS incorporates herein the allegations of paragraphs 1-42.

22       102.    An actual and justiciable controversy exists between ASUS and Round Rock as to

23    the invalidity of the '353 patent, as set forth above.

24       103.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*;

25    ASUS requests the declaration of the Court that the '353 patent is invalid under the Patent Act, 35

26    U.S.C. § 101 *et seq.*, including, but not limited to, sections 102, 103, and 112.

27

28

Case 2:13-cv-02176-SJO-FFM   Document 21   Filed 04/15/13   Page 32 of 83   Page ID #:249

April 26, 2012    Case3:12-cv-02099-WHA   Document1   Filed04/26/12   Page16 of 17.    16
                                          Diversified Legal Services, Inc.

## EIGHTEENTH CLAIM FOR RELIEF

### Declaratory Relief Regarding Unenforceability of the '353 Patent
### Including Due to License and/or Exhaustion

104.   ASUS incorporates herein the allegations of paragraphs 1-42.

105.   An actual and justiciable controversy exists between ASUS and Round Rock as to the unenforceability of the '353 patent, as set forth above.

106.   Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, ASUS requests the declaration of the Court that the '353 patent is unenforceable to the extent that any allegedly infringing products are supplied, directly or indirectly, to ASUS by suppliers who have or had express licenses to the '353 patent.

107.   ASUS further requests the declaration of the Court that the '353 patent is unenforceable to the extent that any allegedly infringing products are supplied, directly or indirectly, to ASUS by suppliers who have implied licenses to the '353 patent.

108.   ASUS further requests the declaration of the Court that the '353 patent is unenforceable under the doctrine of patent exhaustion.

## PRAYER FOR RELIEF

WHEREFORE, ASUS prays that the Court enter declaratory judgment as follows:

(1)   That ASUS and ASUS' products and services do not infringe and have not infringed, directly or indirectly, literally or under the Doctrine of Equivalents, any valid claim of the '791, '276, '053, '949, '520, or '353 patents;

(2)   That the '791, '276, '053, '949, '520, or '353 patents are invalid;

(3)   That the '791, '276, '053, '949, '520, or '353 patents are unenforceable;

(4)   That Round Rock, and all persons acting on its behalf or in concert with it, including without limitation IP Value, be permanently enjoined and restrained from charging, orally or in writing, that the '791, '276, '053, '949, '520, or '353 patents are infringed by ASUS or any of ASUS' products or services, whether directly or indirectly, literally or under the Doctrine of Equivalents;

1       (5)    That ASUS be awarded its costs, expenses, and reasonable attorney fees in this

2    action; and

3       (6)    That ASUS be awarded such other and further relief as the Court may deem

4    appropriate.

5                          DEMAND FOR JURY TRIAL

6              ASUS demands a trial by jury on all issues triable by a jury.

7

8

9    DATED: April 26, 2012

                                        JSchnurer@perkinscoie.com
10                                      Perkins Coie LLP
                                        11988 El Camino Real, Suite 200
11                                      San Diego, CA 92130-3334
                                        Telephone: 858.720.5700
12                                      Facsimile: 858.720.5799

13                                      Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

78864-0001/LEGAL22374122.J                    EXHIBIT 2                      COMPLAINT

                                        33

# EXHIBIT 3

Case3:12-cv-02099-JST Document51 Filed02/26/13 Page1 of 7

1  John P. Schnurer, Bar No. 185725
    JSchnurer@perkinscoie.com
2  Jack Ko, Bar No. 244630
    JKo@perkinscoie.com
3  PERKINS COIE LLP
    11988 El Camino Real, Suite 200
4  San Diego, CA 92130-3334
    Telephone: 858.720.5700
5  Facsimile: 858.720.5799

6  James C. Pistorino, Bar No. 226496
    JPistorino@perkinscoie.com
7  PERKINS COIE LLP
    3150 Porter Drive
8  Palo Alto, CA 94304-1212
    Telephone: 650.838.4300
9  Facsimile: 650.838.4350

10  Attorneys for Plaintiffs
    ASUSTEK COMPUTER INC. and ASUS
11  COMPUTER INTERNATIONAL

12                UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
13                    OAKLAND DIVISION

14

15  ASUS COMPUTER INTERNATIONAL,    Case No. 3:12-cv-02099-JST

16          *Plaintiff,*

17      v.

18  ROUND ROCK RESEARCH, LLC,    JOINT CASE MANAGEMENT
                         STATEMENT
19          *Defendant.*

20  ROUND ROCK RESEARCH, LLC,

21

22          *Plaintiff,*

23      v.

24  ASUSTEK COMPUTER INC. and
    ASUS COMPUTER INTERNATIONAL,
25          *Defendants.*

26

27

28

                                   JOINT CASE MANAGEMENT STATEMENT
                                     CASE NO.: 3:12-CV-02099-JST

EXHIBIT 3
3 5

1    Pursuant to the Court's February 11, 2013 Reassignment Order (D.I. 46), Plaintiffs and
2 Counterclaim Defendants ASUSTeK Computer, Inc. ("ASUS Taiwan") and ASUS Computer
3 International ("ASUS California") (collectively "ASUS") and Defendant and Counterclaim
4 Plaintiff Round Rock Research, LLC ("Round Rock") respectfully submit this Joint Case
5 Management Statement.

6    With respect to the areas addressed in the Court's Reassignment Order, the parties state as
7 follows:

8        a)  The date the case was filed

9    This is a declaratory judgment action filed by Plaintiff and Counterclaim Defendant
10 ASUS California on April 26, 2012.

11       b)  A list or description of each party

12    Plaintiff and counter-claim defendant ASUS Computer International ("ASUS California")
13 is a Fremont, California based seller of computing devices (desktops, laptops, and tablets).

14    Counter-claim defendant ASUSTek Computer Inc. ("ASUS Taiwan") is a Taiwanese
15 based manufacturer of computing devices (desktops, laptops, and tablets).

16    Defendant and counterclaim-plaintiff Round Rock is a Delaware limited liability company
17 with its principal place of business in Mount Kisco, New York. Round Rock has a portfolio of
18 over four thousand patents and pending patent applications that Round Rock acquired from
19 Micron Technology, Inc. in 2009. Round Rock actively licenses its portfolio to many of the
20 leading technology companies in the world. Round Rock's patented inventions span many
21 different technical fields, ranging from semiconductor components and manufacturing processes
22 to consumer products and systems. Among those patents are U.S. Patent Nos. 6,570,791,
23 6,765,276, 6,845,053, 6,930,949, 7,021,520, and 7,279,353 (collectively the "Patents-in-Suit").
24 (D.I. 8 ¶¶ 12-18.)

25       c)  A summary of all claims, counter-claims, cross-claims, or third party claims
26    ASUS California brought claims for declaratory judgment of non-infringement, invalidity,
27 and unenforceability (license/exhaustion) of the six Patents-in-Suit assigned to Round Rock.
28

EXHIBIT 3
36

JOINT CASE MANAGEMENT STATEMENT
CASE NO.: 3:12-CV-02099-JST

1  Round Rock counterclaimed for infringement by ASUS California and ASUS Taiwan on all six
2  Patents-in-Suit. ASUS has denied Round Rock's claims.

3  **d) A brief description of the events underlying the action**

4  ASUS has received various infringement allegations from Round Rock. In October 2011,
5  Round Rock filed suit against ASUS in Delaware alleging infringement of ten U.S. patents. *See*
6  *Round Rock Research LLC v. ASUSTeK Computer Inc. et al.*, 1:11-cv-00978-RGA (Del.). ASUS
7  moved to dismiss that action for, *inter alia*, lack of personal jurisdiction or to transfer the case to
8  this district. The Delaware court has not yet decided that motion. In December 2011, ASUS filed
9  a declaratory judgment action in this district seeking a finding of non-infringement, invalidity,
10  and/or unenforceability of the ten patents named in the Delaware suit. *See Asustek Computer Inc.*
11  *et al v. Round Rock Research, LLC et al.*, 4:11-cv-06636-CW (N.D. Cal.). Both the Delaware
12  action and the related California declaratory judgment action are essentially stayed while the
13  Delaware court addresses ASUS's motion to dismiss or transfer.

14  ASUS California filed this action for declaratory judgment in April 2012. This action
15  addresses six patents, which are not in suit in the other two cases, which Round Rock allege
16  ASUS' products infringe.

17  **e) A description of the relief sought and the damages claimed with an**
18  **explanation as to how damages have been (or will be) computed**

19  ASUS seeks a determination that each of the six United States patents is either invalid or
20  not infringed by ASUS computing devices and/or that ASUS's activities are licensed or without
21  liability to Round Rock as a result of exhaustion.

22  Round Rock seeks judgment that ASUS has infringed, induced infringement of, and/or
23  contributorily infringed all six Patents-in-Suit, that that infringement was willful, and that the case
24  is exceptional. Round Rock seeks damages to which it is entitled under 35 U.S.C. § 284,
25  including both compensatory damages and enhanced/treble damages for willful infringement, and
26  a full accounting of same. Round Rock also seeks pre-judgment and post-judgment interest on its
27  damages; and any such other and further relief in law or equity that the Court deems just and
28  proper.

Case3:12-cv-02099-JST Document51 Filed02/26/13 Page4 of 7

1
2
  f) **The status of discovery, including any significant discovery management issues, as well as any limits or cutoff dates**

3
  Discovery in this case is ongoing. Round Rock served its Preliminary Infringement

4
Contentions on September 20, 2012, and ASUS served its invalidity contentions on November 9,

5
2012. Both parties have served written discovery.

6
  Claim construction is also ongoing. The parties have exchanged proposed claim

7
constructions and filed a Joint Claim Construction Statement on January 11, 2013. A claim

8
construction tutorial is scheduled for April 16, 2013, and a claim construction hearing is

9
scheduled for April 30, 2013. Fact discovery is currently scheduled to be completed by July 31,

10
2013.

  g) **A procedural history of the case, including any previous motions that were decided or submitted, any ADR proceedings or settlement conferences that have been scheduled or concluded, any appellate proceedings that are pending or concluded, and any previous referral to a magistrate judge**

11
12
13
  A Case Management Conference was held on September 6, 2012. Magistrate Ryu

14
conducted a settlement conference on January 11, 2013. An additional settlement conference

15
covering this case as well as the related case before Judge Wilken is scheduled for June 18, 2013

16
before Judge Ryu. No motions have yet been filed or decided.

17
  h) **A description of any other deadlines in place before reassignment, including those for dispositive motions, pretrial conferences, and trials**

18
19
  The September 6, 2012 Case Management Order (D.I. 34) and Notice Setting Tutorial and

20
Claim Construction Hearing (D.I. 50) provide the following dates:

21
22
23
24
25
26
27
28

| April 16, 2013 | Claim construction tutorial |
|---|---|
| April 30, 2013 | Claim construction hearing |
| July 31, 2013 | Non-expert discovery cutoff |
| July 31, 2013 | Opening expert reports for the party with the burden of proof |
| August 14, 2013 | Opposing expert reports |
| August 21, 2013 | Reply expert reports |
| September 4, 2013 | Expert discovery cutoff |

JOINT CASE MANAGEMENT STATEMENT
CASE NO.: 3:12-CV-02099-JST

EXHIBIT 3
3 8

Case3:12-cv-02099-JST   Document51   Filed02/26/13   Page5 of 7

| September 12, 2013 | Dispositive motion deadline |
| October 21, 2013 | Final pre-trial conference |
| October 28, 2013 | Trial |

     i)  Any requested modification of these dates, and the reasons for the request

Round Rock respectfully requests the following modifications to the schedule based on this Court's February 11, 2013 Reassignment Order (D.I. 46), which will move the trial start date until at least January 2, 2014:

| April 16, 2013 | Claim construction tutorial |
| April 30, 2013 | Claim construction hearing |
| October 31, 2013 | Non-expert discovery cutoff |
| October 31, 2013 | Opening expert reports for the party with the burden of proof |
| November 14, 2013 | Opposing expert reports |
| November 21, 2013 | Reply expert reports |
| December 4, 2013 | Expert discovery cutoff |
| December 13, 2013 | Dispositive motion deadline |
| January 27, 2014 | Final pre-trial conference |
| February 3, 2014 | Trial |

     j)  Whether the parties will consent to a magistrate judge for trial

The parties decline to consent to a magistrate judge for trial.

     k)  Whether there exists an immediate need for a case management conference to be scheduled in the action, and why the parties believe such a need exists

The parties do not believe that there is a need for an immediate case management conference.

     l)  A plain and specific statement of any immediate relief sought, if applicable, regarding the case schedule

The parties do not believe that immediate relief regarding the case schedule is needed.

JOINT CASE MANAGEMENT STATEMENT
CASE NO.: 3:12-CV-02099-JST

EXHIBIT 3
39

| | |
|---|---|
| 1 | DATED: February 26, 2013 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

DATED: February 26, 2013

PERKINS COIE LLP
By: */s/ James C. Pistorino*
       James C. Pistorino
       JPistorino@perkinscoie.com

Attorneys for Plaintiffs
ASUSTEK COMPUTER INC. and ASUS
COMPUTER INTERNATIONAL

**BLACK CHANG & HAMILL LLP**

By: */s/ Peter H. Chang*
       Bradford J. Black (SBN 252031)
       bblack@bchllp.com
       Peter H. Chang (SBN 241467)
       pchang@bchllp.com
       4 Embarcadero Center, Suite 1400
       San Francisco, California 94111
       Tel.: 415-813-6210 Fax: 415-813-6222
*Local Counsel for Plaintiff*
*Round Rock Research, LLC*

       Paul A. Bondor (admitted *pro hac vice*)
       pbondor@desmaraisllp.com
       Justin P.D. Wilcox
       jwilcox@desmaraisllp.com
       Jonas R. McDavit (admitted *pro hac vice*)
       jmcdavit@desmaraisllp.com
       Lauren M. Nowierski (admitted *pro hac vice*)
       lnowierski@desmaraisllp.com
       DESMARAIS LLP
       230 Park Avenue
       New York, NY 10169
       Tel.: 212- 351-3400 Fax: 212-351-3401
*Lead Counsel for Plaintiff*
*Round Rock Research, LLC*

I, James C. Pistorino, hereby attest, pursuant to N.D. Cal. General Order No. 45, that the

concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: February 26, 2013

PERKINS COIE LLP
By: */s/ James C. Pistorino*
       James C. Pistorino
       JPistorino@perkinscoie.com

Attorneys for Plaintiffs
ASUSTEK COMPUTER INC. and ASUS
COMPUTER INTERNATIONAL

JOINT CASE MANAGEMENT STATEMENT
CASE NO.: 3:12-CV-02099-JST

EXHIBIT 3
4 0

1 ## CERTIFICATE OF SERVICE

2     The undersigned hereby certifies that all counsel of record who are deemed to have

3 consented to electronic service are being served with a copy of this document via the Court's

4 CM/ECF system per Local Rule 5-5(b). Any other counsel of record will be served via email.

5

6                               */s/ James C. Pistorino*
                              James C. Pistorino

7

8 LEGAL25927689.1

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 3
41

JOINT CASE MANAGEMENT STATEMENT
CASE NO.: 3:12-CV-02099-JST

# EXHIBIT 4

Case3:12-cv-02099-JST  Document34  Filed09/06/12  Page1 of 6

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ASUS COMPUTER INTERNATIONAL,

        Plaintiff,

   v.

ROUND ROCK RESEARCH, LLC.,

        Defendant.

AND RELATED COUNTERCLAIM.

No. C 12-02099 WHA

CASE MANAGEMENT ORDER
AND REFERENCE TO
MAGISTRATE JUDGE FOR
SETTLEMENT/MEDIATION

After a case management conference, the Court enters the following order pursuant to Rule 16 of the Federal Rules of Civil Procedure ("FRCP") and Civil Local Rule 16-10:

1.    All initial disclosures under FRCP 26 must be completed by SEPTEMBER 28, 2012, on pain of preclusion, including full and faithful compliance with FRCP 26(a)(1)(A)(iii).

2.    Leave to add any new parties or pleading amendments must be sought by NOVEMBER 30, 2012.

3.    The claim-construction hearing will be held on MAY 1, 2013, AT 1:30 P.M. Counsel shall meet and confer and propose a briefing schedule leading up to the hearing. This proposed schedule must be filed by SEPTEMBER 28, 2012, and entitled "PROPOSED ORDER RE SCHEDULE FOR CLAIM CONSTRUCTION."

4.    For the claim-construction hearing, the parties must isolate no more than SIX PHRASES in all claims at issue and limit the hearing to those phrases. All other phrases in dispute

EXHIBIT 4
43

United States District Court
For the Northern District of California

1   will be determined at trial absent further order. In the Court's experience, most patent

2   cases turn on the meaning of only a few phrases. Once defined, the case will usually

3   resolve by motion or settlement. If it does not, then the Court will construe any

4   remaining phrases at issue during summary judgment or, at a minimum, before the jury

5   is instructed. Counsel must conduct the presentations at the claim-construction hearing.

6   Expert testimony will normally not be needed but all sides may have an expert present

7   to address points outside the intrinsic record should they arise. In the briefing on claim

8   construction, please include a precis of the eventual summary-judgment issues and how

9   claim construction differences may affect summary judgment. A tutorial for the Court

10  (to be conducted by counsel only, not experts) shall be set for **APRIL 17, 2013, AT**

11  **1:30 P.M.**

12  5.  The non-expert discovery cut-off date shall be **JULY 31, 2013**.

13  6.  The deadline for producing opinions of counsel under Patent Local Rule 3-8 shall be

14      **28 CALENDAR DAYS** before the non-expert discovery cut-off, irrespective of the

15      timeline in said rule.

16  7.  Subject to the exception in the next paragraph, the last date for designation of expert

17      testimony and disclosure of full expert reports under FRCP 26(a)(2) as to any issue

18      on which a party has the burden of proof ("opening reports") shall be **JULY 31, 2013**.

19      Within **FOURTEEN CALENDAR DAYS** of said deadline, all other parties must disclose

20      any expert reports on the same issue ("opposition reports"). Within **SEVEN CALENDAR**

21      **DAYS** thereafter, the party with the burden of proof must disclose any reply reports

22      rebutting specific material in opposition reports. Reply reports must be limited to true

23      rebuttal and should be very brief. They should not add new material that should have

24      been placed in the opening report and the reply material will ordinarily be reserved for

25      the rebuttal or sur-rebuttal phase of the trial. If the party with the burden of proof

26      neglects to make a timely disclosure, the other side, if it wishes to put in expert

27      evidence on the same issue anyway, must disclose its expert report within the

28      fourteen-day period. In that event, the party with the burden of proof on the issue may

EXHIBIT 4

44

then file a reply expert report within the seven-day period, subject to possible exclusion
for "sandbagging" and, at all events, any such reply material may be presented at trial
only after, if at all, the other side actually presents expert testimony to which the reply
is responsive. The cutoff for all expert discovery shall be FOURTEEN CALENDAR DAYS
after the deadline for reply reports. In aid of preparing an opposition or reply report, a
responding party may depose the adverse expert sufficiently before the deadline for
the opposition or reply report so as to use the testimony in preparing the response.
Experts must make themselves readily available for such depositions. Alternatively,
the responding party can elect to depose the expert later in the expert-discovery period.
An expert, however, may be deposed only once unless the expert is used for different
opening and/or opposition reports, in which case the expert may be deposed
independently on the subject matter of each report. At least 28 CALENDAR DAYS before
the due date for opening reports, each party shall serve a list of issues on which it will
offer any expert testimony in its case-in-chief (including from non-retained experts).
This is so that all parties will be timely able to obtain counter-experts on the listed
issues and to facilitate the timely completeness of all expert reports. Failure to so
disclose may result in preclusion.

8. As to damages studies, the cut-off date for *past damages* will be as of the expert report
(or such earlier date as the expert may select). In addition, the experts may try to
project *future damages* (*i.e.*, after the cut-off date) if the substantive standards for
future damages can be met. With timely leave of Court or by written stipulation, the
experts may update their reports (with supplemental reports) to a date closer to the time
of trial.

9. At trial, the direct testimony of experts will be limited to the matters disclosed in
their reports. Omitted material may not ordinarily be added on direct examination.
This means the reports must be complete and sufficiently detailed. Illustrative
animations, diagrams, charts and models may be used on direct examination only if
they were part of the expert's report, with the exception of simple drawings and

EXHIBIT 4

45

1   tabulations that plainly illustrate what is already in the report, which can be drawn by
2   the witness at trial or otherwise shown to the jury. If cross-examination fairly opens
3   the door, however, an expert may go beyond the written report on cross-examination
4   and/or redirect examination. By written stipulation, of course, all sides may relax these
5   requirements. For trial, an expert must learn and testify to the full amount of billing
6   and unbilled time by him or his firm on the engagement.

7   10.  To head off a recurring problem, experts lacking percipient knowledge should avoid
8        vouching for the credibility of witnesses, *i.e.*, whose version of the facts in dispute is
9        correct. This means that they may not, for example, testify that based upon a review of
10       fact depositions and other material supplied by counsel, a police officer did (or did not)
11       violate standards. Rather, the expert should be asked for his or her opinion based —
12       explicitly — upon an assumed fact scenario. This will make clear that the witness is
13       not attempting to make credibility and fact findings and thereby to invade the province
14       of the jury. Of course, a qualified expert can testify to relevant customs, usages,
15       practices, recognized standards of conduct, and other specialized matters beyond the
16       ken of a lay jury. This subject is addressed further in the trial guidelines referenced in
17       paragraph 18 below.

18  11.  Counsel need not request a motion hearing date and may notice non-discovery motions
19       for any Thursday (excepting holidays) at 8:00 a.m. The Court sometimes rules on the
20       papers, issuing a written order and vacating the hearing. If a written request for oral
21       argument is filed before a ruling, stating that a lawyer of four or fewer years out of law
22       school will conduct the oral argument or at least the lion's share, then the Court will
23       hear oral argument, believing that young lawyers need more opportunities for
24       appearances than they usually receive. Discovery motions should be as per the
25       supplemental order referenced in paragraph 18 and shall be expedited.

26  12.  The last date to file dispositive motions shall be SEPTEMBER 12, 2013. No dispositive
27       motions shall be heard more than 35 days *after* this deadline, *i.e.*, if any party waits

28

EXHIBIT 4

46

Case 2:13-cv-02176-SJO-FFM   Document 21   Filed 04/15/13   Page 47 of 83   Page ID #:264

Case3:12-cv-2099-JST   Document34   Filed09/06/12   Page5 of 6

1 until the last day to file, then the parties must adhere to the 35-day track in order to
2 avoid pressure on the trial date.

3 13. The FINAL PRETRIAL CONFERENCE shall be at 2:00 P.M. on OCTOBER 21, 2013.
4 Although the Court encourages argument and participation by younger attorneys, lead
5 trial counsel must attend the final pretrial conference. For the form of submissions for
6 the final pretrial conference and trial, please see paragraph 18 below.

7 14. A JURY TRIAL shall begin on OCTOBER 28, 2013, at 7:30 A.M., in Courtroom 8,
8 19th Floor, 450 Golden Gate Avenue, San Francisco, California, 94102. The trial
9 schedule and time limits shall be set at the final pretrial conference. Although almost
10 all trials proceed on the date scheduled, it may be necessary on occasion for a case to
11 trail, meaning the trial may commence a few days or even a few weeks after the date
12 stated above, due to calendar congestion and the need to give priority to criminal trials.
13 Counsel and the parties should plan accordingly, including advising witnesses.

14 15. Counsel may not stipulate around the foregoing dates without Court approval.

15 16. While the Court encourages the parties to engage in settlement discussions, please do
16 not ask for any extensions on the ground of settlement discussions or on the ground that
17 the parties experienced delays in scheduling settlement conferences, mediation or ENE.
18 The parties should proceed to prepare their cases for trial. No continuance (even if
19 stipulated) shall be granted on the ground of incomplete preparation without competent
20 and detailed declarations setting forth good cause.

21 17. To avoid any misunderstanding with respect to the final pretrial conference and trial,
22 the Court wishes to emphasize that all filings and appearances must be made — on pain
23 of dismissal, default or other sanction — unless and until a dismissal fully resolving the
24 case is received. It will not be enough to inform the clerk that a settlement in principle
25 has been reached or to lodge a partially executed settlement agreement or to lodge a
26 fully executed agreement (or dismissal) that resolves less than the entire case. Where,
27 however, a fully-executed settlement agreement clearly and fully disposing of the entire
28 case is lodged reasonably in advance of the pretrial conference or trial and only a

United States District Court
For the Northern District of California

EXHIBIT 4
47

1    ministerial act remains, the Court will arrange a telephone conference to work out an

2    alternate procedure pending a formal dismissal.

3  18.  If you have not already done so, please read and follow the "Supplemental Order to

4    Order Setting Initial Case Management Conference in Civil Cases Before Judge

5    William Alsup" and other orders issued by the Clerk's office when this action was

6    commenced. Among other things, the supplemental order explains when submissions

7    are to go to the Clerk's Office (the general rule) versus when submissions may go

8    directly to chambers (rarely). With respect to the final pretrial conference and trial,

9    please read and follow the "Guidelines For Trial and Final Pretrial Conference in Civil

10   Jury Cases Before The Honorable William Alsup." All orders and guidelines

11   referenced in the paragraph are available on the district court's website at

12   http://www.cand.uscourts.gov. The website also includes other guidelines for

13   attorney's fees motions and the necessary form of attorney time records for cases

14   before Judge Alsup. If you do not have access to the Internet, you may contact Deputy

15   Clerk Dawn K. Toland at (415) 522-2020 to learn how to pick up a hard copy.

16  19.  This matter is hereby REFERRED to MAGISTRATE JUDGE DONNA RYU for

17   SETTLEMENT/MEDIATION, the Court believing that such a conference would be more

18   effective in settling the present case than any other avenue.

19  20.  All pretrial disclosures under FRCP 26(a)(3) and objections required by FRCP 26(a)(3)

20   must be made on the schedule established by said rule.

21

22   IT IS SO ORDERED.

23

24   Dated: September 6, 2012.

25   WILLIAM ALSUP
     UNITED STATES DISTRICT JUDGE

26

27

28

EXHIBIT 4

4 8

# EXHIBIT 5

## O'Connor, Daniel J

| | |
|---|---|
| **From:** | Lauren Nowlerski <LNowlerski@desmaraisllp.com> |
| **Sent:** | Monday, January 14, 2013 2:48 PM |
| **To:** | O'Connor, Daniel J |
| **Subject:** | RE: ASUS Computer Int'l. v Round Rock Research LLC |

Dan,

It was nice speaking with you as well. I confirm that we have agreed to an extension of the return date on the Himax Imaging subpoena to March 14, 2013.

Kind regards,
Lauren

Lauren M. Nowlerski
**Desmarais LLP**
230 Park Avenue
New York, NY 10169
D: (212) 351-3426
M: (212) 351-3400
F: (212) 351-3401
lnowlerski@desmaraisllp.com

**From:** O'Connor, Daniel J [mailto:Daniel.O'Connor@bakermckenzie.com]
**Sent:** Monday, January 14, 2013 3:12 PM
**To:** Lauren Nowlerski
**Subject:** ASUS Computer Int'l. v Round Rock Research LLC

Hello Lauren,

It was nice talking to you just now. This is to confirm an extension of the return date on the subpoena served on Himax Imaging by six weeks, to March 14, 2013. Please send a return email confirming this.

Thanks,

Dan

Daniel J. O'Connor
Baker & McKenzie
300 E. Randolph Street
Chicago, Illinois 60601
ph 312 861 2790

Pursuant to requirements related to practice before the Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties imposed under the United States Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message. Please visit www.bakermckenzie.com/disclaimers for other important information concerning this message.

EXHIBIT 5

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

EXHIBIT 5

5 1

# EXHIBIT 6

Baker & McKenzie LLP

300 East Randolph Street, Suite 5000
Chicago, IL 60601
United States

Tel: +1 312 861 8000
Fax: +1 312 861 2899
www.bakermckenzie.com

Asia Pacific
Bangkok
Beijing
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta*
Kuala Lumpur*
Manila*
Melbourne
Shanghai
Singapore
Sydney
Taipei
Tokyo
Europe, Middle East
& Africa
Abu Dhabi
Almaty
Amsterdam
Antwerp
Bahrain
Baku
Barcelona
Berlin
Brussels
Budapest
Cairo
Casablanca
Doha
Dusseldorf
Frankfurt/Main
Geneva
Istanbul
Johannesburg
Kyiv
London
Luxembourg
Madrid
Milan
Moscow
Munich
Paris
Prague
Riyadh
Rome
St. Petersburg
Stockholm
Vienna
Warsaw
Zurich
Latin America
Bogota
Brasilia*
Buenos Aires
Caracas
Guadalajara
Juarez
Lima
Mexico City
Monterrey
Porto Alegre*
Rio de Janeiro*
Santiago
Sao Paulo*
Tijuana
Valencia
North America
Chicago
Dallas
Houston
Miami
New York
Palo Alto
San Francisco
Toronto
Washington, DC
* Associated Firm

January 21, 2013

Lauren M. Nowierski                                    By email/confirmation by U.S. Mail
Desmarais LLP
230 Park Avenue
New York, NY 10169

### *ASUS Computer International v. Round Rock Research LLC*

Dear Ms Nowierski,

We represent Himax Imaging Corp. ("Himax Imaging"), in connection with the subpoena ("the Subpoena") directed to Himax Imaging in the above-captioned case. Herein we state objections on behalf of Himax Imaging, pursuant to F.R.Civ. Proc.45.

We object to the extent the Subpoena seeks to discover documents or information that is the subject of the attorney-client privilege, the work-product privilege, the joint defense privilege, or any other applicable privilege. Himax Imaging expressly preserves and does not waive any and all privileges that are applicable to any documents or information that are sought to be discovered by the Subpoena.

We object to the extent the Subpoena seeks to discover documents or information that is not in the "possession, custody, or control" of Himax Imaging, as authorized by F.R.Civ.Proc. 45(a)(1)(A)(iii). Specifically, the Subpoena seeks to compel production of documents in the possession, custody or control not only of Himax Imaging, but also of other entities. We note and object to in particular, in this regard, the Subpoena's "Definitions and Instructions" number 1.

We object to the extent the Subpoena seeks to compel Himax Imaging to do anything beyond producing responsive, non-privileged documents, as allowed by F.R.Civ.Proc. 45. We note and object to, in particular, in this regard, the Subpoena's "Definitions and Instructions" numbered 17-19.

We object to the extent the Subpoena seeks to compel production of documents that are not relevant to the subject matter of the pending action or not reasonably calculated to lead to the discovery of admissible evidence. See *Epstein v. MCA*, 54 F3d 1422, 1424 (9th Cir. 1995); *Mailhoit v Home Depot USA, Inc.*, 285 F.R.D. 566 (CDCA 2012). Based on the complaint and the asserted patents, it appears that the relevant products, as could potentially relate to Himax, would include only the Himax HM2050. If you believe the case presently includes as relevant products applicable to Himax any other products, please advise and provide support for this position. We note and object to, in particular

Baker & McKenzie LLP is a member of Baker & McKenzie International, a Swiss Verein.
XHIBIT 6

in this regard, the definition of "Product" as stated in Item 6 of "Definitions and Instructions".

We object to the extent the Subpoena seeks discovery of documents "sufficient to show" or "sufficient to identify" as being overly broad and vague and failing to describe the documents to be produced with "reasonable particularity," pursuant to F.R.Civ. Proc. 34(b)(1)(A). We note and object to, in particular in this regard, items numbered 1-9 and 14.

We object further to items 14 and 15 as vague and overly broad by referring to documents relating to such terms, for example, as "market demand", "marketing", "promotion."

If you have any questions or comments on these objections, please feel free to contact me and we can discuss them.

Regards,

Daniel J. O'Connor
Partner
312 861 2790
daniel.oconnor@bakermckenzie.com

EXHIBIT 6

# EXHIBIT 7

Baker & McKenzie LLP

300 East Randolph Street, Suite 5000
Chicago, IL 60601
United States

Tel: +1 312 861 8000
Fax: +1 312 861 2899
www.bakermckenzie.com

Asia Pacific
Bangkok
Beijing
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta*
Kuala Lumpur*
Manila*
Melbourne
Shanghai
Singapore
Sydney
Taipei
Tokyo
Europe, Middle East
& Africa
Abu Dhabi
Almaty
Amsterdam
Antwerp
Bahrain
Baku
Barcelone
Berlin
Brussels
Budapest
Cairo
Casablanca
Doha
Dusseldorf
Frankfurt/Main
Geneva
Istanbul
Johannesburg
Kyiv
London
Luxembourg
Madrid
Milan
Moscow
Munich
Paris
Prague
Riyadh
Rome
St. Petersburg
Stockholm
Vienna
Warsaw
Zurich
Latin America
Bogota
Brasilia*
Buenos Aires
Caracas
Guadalajara
Juarez
Lima
Mexico City
Monterrey
Porto Alegre*
Rio de Janeiro*
Santiago
Sao Paulo*
Tijuana
Valencia
North America
Chicago
Dallas
Houston
Miami
New York
Palo Alto
San Francisco
Toronto
Washington, DC
* Associated Firm

January 31, 2013

Lauren M. Nowierski
Desmarais LLP
230 Park Avenue
New York, NY 10169

### *ASUS Computer International v Round Rock Research LLC*

Dear Lauren,

This is a follow up to our communications regarding the subpoena directed to Himax
Imaging.

Can you please provide a copy of Round Rock's infringement contentions under NDCA
L.P.R. 3-1? Can you confirm that a Himax product has been identified as an accused
instrumentality in Round Rock's infringement contentions?

Your cooperation is appreciated.

Regards,

Daniel O'Connor
Partner
+1 312 861 2790
Daniel.O'Connor@bakermckenzie.com

Baker & McKenzie LLP is a member of Baker & McKenzie International, a Swiss Verein.

EXHIBIT 7

# EXHIBIT 8

## O'Connor, Daniel J

| | |
|---|---|
| **From:** | Lauren Nowierski <LNowierski@desmaraisllp.com> |
| **Sent:** | Tuesday, February 05, 2013 4:31 PM |
| **To:** | O'Connor, Daniel J |
| **Cc:** | Justin Wilcox |
| **Subject:** | RE: ASUS Computer Int'l. v Round Rock Research LLC |

Daniel:

I am writing regarding your January 21, 2013 and January 31, 2013 correspondence. Based on discovery we received from ASUS, we understand that the product you identified in your objections, the Himax HM2050, is a component of at least two of the accused products identified in Round Rock's infringement contentions.

We are interested in discussing Himax's Objections and Responses to Round Rock's subpoena. Please provide your availability Thursday or Friday of this week.

Kind regards,
Lauren

Lauren M. Nowierski
**Desmarais** LLP
230 Park Avenue
New York, NY 10169
D: (212) 351-3426
M: (212) 351-3400
F: (212) 351-3401
lnowierski@desmaraisllp.com

**From:** O'Connor, Daniel J [mailto:Daniel.O'Connor@bakermckenzie.com]
**Sent:** Thursday, January 31, 2013 3:21 PM
**To:** Lauren Nowierski
**Subject:** ASUS Computer Int'l. v Round Rock Research LLC

Please see attached correspondence.

Pursuant to requirements related to practice before the Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purposes of (i) avoiding penalties imposed under the United States Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message. Please visit www.bakermckenzie.com/disclaimers for other important information concerning this message.

This email may contain confidential and privileged material for the use of the intended recipient. Any review,

EXHIBIT 8

use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

EXHIBIT 8

5 9

# EXHIBIT 9

## O'Connor, Daniel J

| From: | O'Connor, Daniel J |
|---|---|
| Sent: | Thursday, February 21, 2013 9:11 AM |
| To: | 'Lauren Nowierski' |
| Cc: | Justin Wilcox |
| Subject: | RE: ASUS Computer Int'l. v Round Rock Research LLC |
| Attachments: | Kelora Sys LLC v Target Corp 2011 U S Dist LEXIS 129859 (N D Cal Nov 9 2011).docx; Mediatek Inc v Freescale Semiconductor Inc 2013 U S Dist LEXIS 19568 (N D Cal Feb 13 2013).docx |

Hello Lauren,

This is a follow up to our call last week regarding the subpoena directed to Himax Imaging in Irvine. You confirmed that no Himax products are identified in Round Rock's infringement contentions. You mentioned that Round Rock is presently involved in some contentious discovery issues with ASUS, and that Round Rock is considering moving for leave to amend it's infringement contentions.

As I indicated in our call, I believe the law in NDCA is that a patent holder is not allowed to take discovery on a product not identified as an instrumentality of infringement in the infringement contentions. I am attaching two cases that support that position.

In the call, I suggested that Round Rock withdraw the subpoena without prejudice. If Round Rock is allowed to amend its infringement contentions and a Himax product is identified in the amended contentions, the subpoena could be re-instated at that point. Please let me know on this. Under the circumstances, I don't think Himax should be burdened with fighting or responding to the subpoena.

Dan

**From:** Lauren Nowierski [mailto:LNowierski@desmaraisllp.com]
**Sent:** Tuesday, February 12, 2013 12:15 PM
**To:** O'Connor, Daniel J
**Cc:** Justin Wilcox
**Subject:** RE: ASUS Computer Int'l. v Round Rock Research LLC

Hi Dan.

3pm CST/ 4pm EST today will work. What number can I reach you at?

Thanks,
Lauren

**From:** O'Connor, Daniel J [mailto:Daniel.O'Connor@bakermckenzie.com]
**Sent:** Tuesday, February 12, 2013 12:50 PM
**To:** Lauren Nowierski
**Cc:** Justin Wilcox
**Subject:** RE: ASUS Computer Int'l. v Round Rock Research LLC

How about 3 pm CST today?

**From:** Lauren Nowierski [mailto:LNowierski@desmaraisllp.com]
**Sent:** Wednesday, February 06, 2013 9:07 PM

EXHIBIT 9
6 1

**To:** O'Connor, Daniel J
**Cc:** Justin Wilcox
**Subject:** RE: ASUS Computer Int'l. v Round Rock Research LLC

No problem, Dan. Monday or Tuesday works for me. Please let me know what time is best for you.

Thanks,
Lauren

**From:** O'Connor, Daniel J [mailto:Daniel.O'Connor@bakermckenzie.com]
**Sent:** Tuesday, February 05, 2013 7:06 PM
**To:** Lauren Nowierski
**Cc:** Justin Wilcox
**Subject:** RE: ASUS Computer Int'l. v Round Rock Research LLC

Hello Lauren,

I am in Taiwan this week. I can do a call next week. How about Monday or Tuesday?

Dan

**From:** Lauren Nowierski [mailto:LNowierski@desmaraisllp.com]
**Sent:** Tuesday, February 05, 2013 4:31 PM
**To:** O'Connor, Daniel J
**Cc:** Justin Wilcox
**Subject:** RE: ASUS Computer Int'l. v Round Rock Research LLC

Daniel:

I am writing regarding your January 21, 2013 and January 31, 2013 correspondence. Based on discovery we received from ASUS, we understand that the product you identified in your objections, the Himax HM2050, is a component of at least two of the accused products identified in Round Rock's infringement contentions.

We are interested in discussing Himax's Objections and Responses to Round Rock's subpoena. Please provide your availability Thursday or Friday of this week.

Kind regards,
Lauren

Lauren M. Nowierski
Desmarais LLP
230 Park Avenue
New York, NY 10169
D: (212) 351-3426
M: (212) 351-3400
F: (212) 351-3401
lnowierski@desmaraisllp.com

**From:** O'Connor, Daniel J [mailto:Daniel.O'Connor@bakermckenzie.com]
**Sent:** Thursday, January 31, 2013 3:21 PM

EXHIBIT 9
6 2

**To:** Lauren Nowierski
**Subject:** ASUS Computer Int'l. v Round Rock Research LLC

Please see attached correspondence.

Pursuant to requirements related to practice before the Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purposes of (i) avoiding penalties imposed under the United States Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message. Please visit www.bakermckenzie.com/disclaimers for other important information concerning this message.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

EXHIBIT 9

6 3

# EXHIBIT 10

## O'Connor, Daniel J

| | |
|---|---|
| **From:** | Lauren Nowierski <LNowierski@desmaraislip.com> |
| **Sent:** | Tuesday, March 05, 2013 3:32 PM |
| **To:** | O'Connor, Daniel J |
| **Cc:** | Justin Wilcox |
| **Subject:** | RE: ASUS Computer Int'l. v Round Rock Research LLC |

Dan:

I write in response to your February 21, 2013 email. We have reviewed the cases you sent us, and in our view, these cases do not support Himax's position. The facts of the cases you cited are markedly different than the circumstances here. In both of those cases, a party sought discovery from another party regarding products that were not named as accused products. Here, there is no dispute that the third party discovery sought from Himax is related to accused products identified in Round Rock's infringement contentions in the litigation. The Himax image sensor for which Round Rock seeks discovery is a component of an accused product and was identified in discovery as an accused instrumentality of that accused product.

Further, I would like to clarify that you misunderstood and/or mischaracterized our position with regard to our plan for party discovery. Regardless, the parties' own discovery issues are irrelevant to the Himax subpoena, which seeks discovery of a Himax image sensor identified during discovery.

Accordingly, we do not intend to withdraw the subpoena to Himax. We request that Himax provide a date certain by which it will produce documents responsive to the document requests in Round Rock's subpoena. If you have any further questions regarding the document requests, please let me know when you are available to discuss those questions.

Thanks,
Lauren

Lauren M. Nowierski
**Desmarais LLP**
230 Park Avenue
New York, NY 10169
D: (212) 351-3426
M: (212) 351-3400
F: (212) 351-3401
lnowierski@desmaraislip.com

**From:** O'Connor, Daniel J [mailto:Daniel.O'Connor@bakermckenzie.com]
**Sent:** Thursday, February 21, 2013 10:11 AM
**To:** Lauren Nowierski
**Cc:** Justin Wilcox
**Subject:** RE: ASUS Computer Int'l. v Round Rock Research LLC

Hello Lauren,

This is a follow up to our call last week regarding the subpoena directed to Himax Imaging in Irvine. You confirmed that no Himax products are identified in Round Rock's infringement contentions. You mentioned that Round Rock is presently involved in some contentious discovery issues with ASUS, and that Round Rock is considering moving for leave to amend it's infringement contentions. EXHIBIT 10

65

As I indicated in our call, I believe the law in NDCA is that a patent holder is not allowed to take discovery on a product not identified as an instrumentality of infringement in the infringement contentions. I am attaching two cases that support that position.

In the call, I suggested that Round Rock withdraw the subpoena without prejudice. If Round Rock is allowed to amend its infringement contentions and a Himax product is identified in the amended contentions, the subpoena could be re-instated at that point. Please let me know on this. Under the circumstances, I don't think Himax should be burdened with fighting or responding to the subpoena.

Dan

**From:** Lauren Nowierski [mailto:LNowierski@desmaraisllp.com]
**Sent:** Tuesday, February 12, 2013 12:15 PM
**To:** O'Connor, Daniel J
**Cc:** Justin Wilcox
**Subject:** RE: ASUS Computer Int'l. v Round Rock Research LLC

Hi Dan,

3pm CST/ 4pm EST today will work. What number can I reach you at?

Thanks,
Lauren

**From:** O'Connor, Daniel J [mailto:Daniel.O'Connor@bakermckenzie.com]
**Sent:** Tuesday, February 12, 2013 12:50 PM
**To:** Lauren Nowierski
**Cc:** Justin Wilcox
**Subject:** RE: ASUS Computer Int'l. v Round Rock Research LLC

How about 3 pm CST today?

**From:** Lauren Nowierski [mailto:LNowierski@desmaraisllp.com]
**Sent:** Wednesday, February 06, 2013 9:07 PM
**To:** O'Connor, Daniel J
**Cc:** Justin Wilcox
**Subject:** RE: ASUS Computer Int'l. v Round Rock Research LLC

No problem, Dan. Monday or Tuesday works for me. Please let me know what time is best for you.

Thanks,
Lauren

**From:** O'Connor, Daniel J [mailto:Daniel.O'Connor@bakermckenzie.com]
**Sent:** Tuesday, February 05, 2013 7:06 PM
**To:** Lauren Nowierski
**Cc:** Justin Wilcox
**Subject:** RE: ASUS Computer Int'l. v Round Rock Research LLC

Hello Lauren,

EXHIBIT 10

66

I am in Taiwan this week. I can do a call next week. How about Monday or Tuesday?

Dan

**From:** Lauren Nowierski [mailto:LNowierski@desmaraisllp.com]
**Sent:** Tuesday, February 05, 2013 4:31 PM
**To:** O'Connor, Daniel J
**Cc:** Justin Wilcox
**Subject:** RE: ASUS Computer Int'l. v Round Rock Research LLC


Daniel:

I am writing regarding your January 21, 2013 and January 31, 2013 correspondence. Based on discovery we received from ASUS, we understand that the product you identified in your objections, the Himax HM2050, is a component of at least two of the accused products identified in Round Rock's infringement contentions.

We are interested in discussing Himax's Objections and Responses to Round Rock's subpoena. Please provide your availability Thursday or Friday of this week.

Kind regards,
Lauren

Lauren M. Nowierski
Desmarais LLP
230 Park Avenue
New York, NY 10169
D: (212) 351-3426
M: (212) 351-3400
F: (212) 351-3401
lnowierski@desmaraisllp.com

**From:** O'Connor, Daniel J [mailto:Daniel.O'Connor@bakermckenzie.com]
**Sent:** Thursday, January 31, 2013 3:21 PM
**To:** Lauren Nowierski
**Subject:** ASUS Computer Int'l. v Round Rock Research LLC

Please see attached correspondence.


Pursuant to requirements related to practice before the Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purposes of (i) avoiding penalties imposed under the United States Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message. Please visit www.bakermckenzie.com/disclaimers for other important information concerning this message.


This email may contain confidential and privileged material for the use of the intended recipient. Any review,

EXHIBIT 10
6 7

use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

EXHIBIT 10

6 8

# EXHIBIT 11

## O'Connor, Daniel J

| From: | O'Connor, Daniel J |
|---|---|
| Sent: | Monday, March 11, 2013 2:08 PM |
| To: | 'Lauren Nowierski' |
| Cc: | Justin Wilcox; Galaria, Omar D (Omar.Galaria@bakermckenzie.com) |
| Subject: | RE: ASUS Computer Int'l. v Round Rock Research LLC |

Hello Lauren,

Thank you for your email.

I would like to get clarification on some points.

As you know, NDCA PLA 3-1 requires the patent holder to provide Infringement Contentions (ICs) that identify "each accused apparatus, product, process, method, act or other instrumentality ("Accused Instrumentality")..." PLA 3-1(b). The identification of the Accused Instrumentalities is to be "as specific as possible. Id. The patent holder is also required to provide claim charts "where each limitation of each claim is found within each Accused Instrumentality..." PLA 3-1(c). In our last call, you acknowledged that no Himax product is identified in Round Rock's infringement contentions as an Accused Instrumentality (or otherwise). This is the point addressed in my prior email to you, and is the substantive point in the cases I sent you.

Your email states that the "discovery sought from Himax is related to accused products identified in Round Rock's infringement contentions." That is not the same thing as saying that a Himax product is identified in Round Rock's infringement contentions as an accused product. You also state that a Himax image sensor is "a component of an accused product", which again is different from stating that a Himax image sensor is identified in an infringement contention as an Accused Instrumentality.

You also state in your email that a Himax image sensor was "identified in discovery as an accused instrumentality of that accused [apparently ASUS] product". Please clarify. Are you saying that, in an interrogatory answer, Round Rock identified a Himax image sensor as an "accused instrumentality"? If so, that is different from Himax identifying a Himax product as an Accused Instrumentality in an IC under PLA 3-1. Alternatively, are you saying that ASUS, in an interrogatory answer, identified a Himax product as an Accused Instrumentality? If so, that is difficult to believe – an accused infringer does not ordinarily identify Accused Instrumentalities, rather it is the patent holder who does that. Per the local rules, an Accused Instrumentality is identified in a party's infringement contentions. In our last call, you told me that ASUS had identified or listed a Himax image sensor in an interrogatory answer as a component of an accused ASUS product, and that is what has led Round Rock to attempt to pursue discovery against Himax. That is different from what is stated in your email. Could you please clarify on this point.

In our last call, you indicated that Round Rock is considering moving to amend their ICs, to add a Himax product as an Accused Instrumentality. Is that still a plan that Round Rock is considering? If so, that plan could resolve our dispute. If Round Rock is allowed to so amend their ICs, then that would seem to allow Round Rock to take discovery on whatever product of Himax is identified as an Accused Instrumentality. If Round Rock is not allowed to so amend their ICs, that would put an end to the issue of discovery against Himax.

Please advise on the above points. I look forward to hearing from you.

Dan

From: Lauren Nowierski [mailto:LNowierski@desmaraisllp.com]
Sent: Tuesday, March 05, 2013 3:32 PM
To: O'Connor, Daniel J
Cc: Justin Wilcox
Subject: RE: ASUS Computer Int'l. v Round Rock Research LLC

EXHIBIT 11
7 0

Dan:

I write in response to your February 21, 2013 email. We have reviewed the cases you sent us, and in our view, these cases do not support Himax's position. The facts of the cases you cited are markedly different than the circumstances here. In both of those cases, a party sought discovery from another party regarding products that were not named as accused products. Here, there is no dispute that the third party discovery sought from Himax is related to accused products identified in Round Rock's infringement contentions in the litigation. The Himax image sensor for which Round Rock seeks discovery is a component of an accused product and was identified in discovery as an accused instrumentality of that accused product.

Further, I would like to clarify that you misunderstood and/or mischaracterized our position with regard to our plan for party discovery. Regardless, the parties' own discovery issues are irrelevant to the Himax subpoena, which seeks discovery of a Himax image sensor identified during discovery.

Accordingly, we do not intend to withdraw the subpoena to Himax. We request that Himax provide a date certain by which it will produce documents responsive to the document requests in Round Rock's subpoena. If you have any further questions regarding the document requests, please let me know when you are available to discuss those questions.

Thanks,
Lauren

Lauren M. Nowierski
Desmarais LLP
230 Park Avenue
New York, NY 10169
D: (212) 351-3426
M: (212) 351-3400
F: (212) 351-3401
lnowierski@desmaraisllp.com

**From:** O'Connor, Daniel J [mailto:Daniel.O'Connor@bakermckenzie.com]
**Sent:** Thursday, February 21, 2013 10:11 AM
**To:** Lauren Nowierski
**Cc:** Justin Wilcox
**Subject:** RE: ASUS Computer Int'l. v Round Rock Research LLC

Hello Lauren,

This is a follow up to our call last week regarding the subpoena directed to Himax Imaging in Irvine. You confirmed that no Himax products are identified in Round Rock's infringement contentions. You mentioned that Round Rock is presently involved in some contentious discovery issues with ASUS, and that Round Rock is considering moving for leave to amend it's infringement contentions.

As I indicated in our call, I believe the law in NDCA is that a patent holder is not allowed to take discovery on a product not identified as an instrumentality of infringement in the infringement contentions. I am attaching two cases that support that position.

In the call, I suggested that Round Rock withdraw the subpoena without prejudice. If Round Rock is allowed to amend its infringement contentions and a Himax product is identified in the amended contentions, the subpoena could be re-instated at that point. Please let me know on this. Under the circumstances, I don't think Himax should be burdened with fighting or responding to the subpoena.

EXHIBIT 11

Dan

**From:** Lauren Nowierski [mailto:LNowierski@desmaraisllp.com]
**Sent:** Tuesday, February 12, 2013 12:15 PM
**To:** O'Connor, Daniel J
**Cc:** Justin Wilcox
**Subject:** RE: ASUS Computer Int'l. v Round Rock Research LLC

Hi Dan,

3pm CST/ 4pm EST today will work. What number can I reach you at?

Thanks,
Lauren

**From:** O'Connor, Daniel J [mailto:Daniel.O'Connor@bakermckenzie.com]
**Sent:** Tuesday, February 12, 2013 12:50 PM
**To:** Lauren Nowierski
**Cc:** Justin Wilcox
**Subject:** RE: ASUS Computer Int'l. v Round Rock Research LLC

How about 3 pm CST today?

**From:** Lauren Nowierski [mailto:LNowierski@desmaraisllp.com]
**Sent:** Wednesday, February 06, 2013 9:07 PM
**To:** O'Connor, Daniel J
**Cc:** Justin Wilcox
**Subject:** RE: ASUS Computer Int'l. v Round Rock Research LLC

No problem, Dan. Monday or Tuesday works for me. Please let me know what time is best for you.

Thanks,
Lauren

**From:** O'Connor, Daniel J [mailto:Daniel.O'Connor@bakermckenzie.com]
**Sent:** Tuesday, February 05, 2013 7:06 PM
**To:** Lauren Nowierski
**Cc:** Justin Wilcox
**Subject:** RE: ASUS Computer Int'l. v Round Rock Research LLC

Hello Lauren,

I am in Taiwan this week. I can do a call next week. How about Monday or Tuesday?

Dan

**From:** Lauren Nowierski [mailto:LNowierski@desmaraisllp.com]
**Sent:** Tuesday, February 05, 2013 4:31 PM
**To:** O'Connor, Daniel J
**Cc:** Justin Wilcox
**Subject:** RE: ASUS Computer Int'l. v Round Rock Research LLC

EXHIBIT 11

Daniel:

I am writing regarding your January 21, 2013 and January 31, 2013 correspondence. Based on discovery we received from ASUS, we understand that the product you identified in your objections, the Himax HM2050, is a component of at least two of the accused products identified in Round Rock's infringement contentions.

We are interested in discussing Himax's Objections and Responses to Round Rock's subpoena. Please provide your availability Thursday or Friday of this week.

Kind regards,
Lauren

Lauren M. Nowierski
**Desmarais LLP**
230 Park Avenue
New York, NY 10169
D: (212) 351-3426
M: (212) 351-3400
F: (212) 351-3401
lnowierski@desmaraisllp.com

**From:** O'Connor, Daniel J [mailto:Daniel.O'Connor@bakermckenzie.com]
**Sent:** Thursday, January 31, 2013 3:21 PM
**To:** Lauren Nowierski
**Subject:** ASUS Computer Int'l. v Round Rock Research LLC

Please see attached correspondence.

Pursuant to requirements related to practice before the Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purposes of (i) avoiding penalties imposed under the United States Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message. Please visit www.bakermckenzie.com/disclaimers for other important information concerning this message.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

EXHIBIT 11

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message..

EXHIBIT 11

# EXHIBIT 12



US006765276B2

(12) **United States Patent**
Fasen et al.

(10) Patent No.: US 6,765,276 B2
(45) Date of Patent: Jul. 20, 2004

(54) BOTTOM ANTIREFLECTION COATING COLOR FILTER PROCESS FOR FABRICATING SOLID STATE IMAGE SENSORS

(75) Inventors: Duane Fasen, Loveland, CO (US); Jack D. Meyer, Fort Collins, CO (US); Cheryl Bailey, Fort Collins, CO (US); John H. Stanback, Fort Collins, CO (US); Karl Hansen, Fort Collins, CO (US)

(73) Assignee: Agilent Technologies, Inc., Palo Alto, CA (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: 09/938,394

(22) Filed: Aug. 23, 2001

(65) **Prior Publication Data**

US 2003/0038293 A1 Feb. 27, 2003

(51) Int. Cl.7 .......................... H01L 29/18; H01L 33/00; H01L 31/0232; H01L 31/00

(52) U.S. Cl. ...................... 257/437; 257/440; 257/436; 257/443; 257/88

(58) Field of Search .............................. 257/79, 80, 81, 257/82, 91, 98, 88, 89, 431, 432, 435, 436, 437, 440

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,782,009 A | | 11/1988 | Bolon et al. |
| 4,855,199 A | | 8/1989 | Bolon et al. |
| 5,258,608 A | | 11/1993 | Uchiya |
| 5,266,501 A | | 11/1993 | Imai |
| 5,654,202 A | * | 8/1997 | Daly et al. ..................... 438/70 |
| 5,990,506 A | | 11/1999 | Fossum et al. |
| 6,048,662 A | | 4/2000 | Bruhnke et al. |
| 6,060,732 A | * | 5/2000 | Murakami et al. .......... 257/215 |

| | | | |
|---|---|---|---|
| 6,106,995 A | * | 8/2000 | Dixit et al. ................. 430/270 |
| 6,184,055 B1 | * | 2/2001 | Yang et al. .................. 438/57 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| JP | 11-103037 | 4/1999 |
| WO | WO 97/46915 | 12/1997 |

OTHER PUBLICATIONS

"Production metrology and control of color filter array photolithography for CMOS imagers," SPIE vol. 3677, pp. 326–337 (1999).

"Color filter array for CCD and CMOS image sensors using a chemically amplified, thermally cured, pre-dyed, positive-tone photoresist for 365 nm lithography," SPIE vol. 3678, pp. 1083–1090 (1999).

"Advanced complementary color filter technology without dyeing process for CCD image sensors," SPIE vol. 3333, pp. 1232–1240 (1998).

* cited by examiner

*Primary Examiner*—Nathan J. Flynn
*Assistant Examiner*—Victor A. Mandala, Jr.

(57) **ABSTRACT**

An image sensor system and methods of making such a system are described. The image sensor system includes a color filter array that is formed by a color filter process that incorporates a bottom antireflection coating. The bottom antireflection coating forms a protective layer that protects exposed areas of the active image sensing device structure during formation of the color filter array and, thereby, preserves the intrinsic transmission characteristics of the active image sensing device structure. The bottom antireflection coating also reduces degradation of metal structures (e.g., bonding pads) and pixel edges at the exposed surface of the active image sensing device structure. In addition, the bottom antireflection coating provides a reliable adhesive surface for the color filter array, substantially eliminating lifting of the color filter array resist structures. In some embodiments, the bottom antireflection coating also improves the optical transmission characteristics of one or more colors of the colors filter array.

11 Claims, 4 Drawing Sheets



EXHIBIT 12

**U.S. Patent**     Jul. 20, 2004     Sheet 1 of 4     US 6,765,276 B2



FIG. 1



FIG. 2

EXHIBIT 12

77



FIG. 3

EXHIBIT 12

U.S. Patent          Jul. 20, 2004          Sheet 3 of 4          US 6,765,276 B2



FIG. 4

EXHIBIT 12



FIG. 5

EXHIBIT 12

US 6,765,276 B2

**1**

## BOTTOM ANTIREFLECTION COATING COLOR FILTER PROCESS FOR FABRICATING SOLID STATE IMAGE SENSORS

### TECHNICAL FIELD

This invention relates to solid state image sensors that include color filter arrays that are formed by a bottom antireflection coating (BARC) color filter process, and methods of making the same.

### BACKGROUND

In general, digital imaging systems, such as digital cameras, include image sensors (or simply imagers) for capturing images. Various types of image sensors have been developed, including charge-coupled device (CCD) image sensors and complementary metal-oxide semiconductor (CMOS) image sensors. These devices typically include an array of pixels, each of which contains a light-sensing element, such as an n+ to p-substrate photodiode, a virtual gate buried n-channel photodetector, or a photo-gate detector, which defines a light-sensing region of an image sensor. Image sensors also include circuitry for driving light signals from the light-sensing elements to other process circuitry. CCD image sensors typically include a photoelectric converter and charge accumulator for absorbing light from an object and collecting photo-generated charges into signal charge packets. In addition, CCD image sensors may include a charge transfer region for conveying charge packets from the photoelectric converter and charge accumulator, and a charge-to-voltage signal converter for generating a voltage output corresponding to the signal charge packets that are transferred through the charge transfer region. CMOS image sensors typically include an array of active pixel sensors and a row (register) of correlated double-sampling (CDS) amplifiers that sample and hold the output of a given row of pixel sensors. In both CMOS and CCD image sensor systems, each pixel sensor accumulates charge during an optical integration period in accordance with the light intensity reaching the relevant sensing area of the pixel sensor.

In color applications, each pixel sensor element typically receives light through a color filter that allows only a relatively narrow radiation wavelength range (e.g., the visible spectrum) to reach the pixel sensors of the image sensor. Multiple sets of color filters typically are arranged in a pattern of pixel size mosaics or pixel wide stripes. The color filters may be applied directly to the surface of an image sensor. Alternatively, the color filters may be formed on a passivation layer (see, e.g., U.S. Pat. No. 5,654,202), in which case a separate masking step is required to expose the bonding pads of the image sensor. The color filters typically are formed from a photoresist structure that includes a layer for each filter color. A common color filter material is spin coated-, dyed-, or pigmented-photoresist. The filter colors for a given color filter set may be additive (e.g., red, green, blue) or subtractive (e.g., cyan, magenta, yellow), or a combination of both additive and subtractive.

The light collecting efficiency of an image sensor may be improved by depositing a micro lens array over the CFA material of each pixel region. A planarization layer that is highly transmissive in the imaging wavelength range also may be deposited between the color filter array and the micro lens material.

### SUMMARY

The invention features a novel image sensor system and methods of making such a system. In particular, the novel

**2**

image sensor system includes a color filter array that is formed by an inventive color filter process that incorporates a bottom antireflection coating. The bottom antireflection coating forms a protective layer that protects exposed areas of the active image sensing device structure during formation of the color filter array and, thereby, preserves the intrinsic transmission characteristics of the active image sensing device structure. For example, the bottom antireflection coating protects sensitive areas of the active image sensing device structure against degradation that otherwise might be caused by exposure to developing solutions that are used to pattern the color filter array. The bottom antireflection coating also reduces degradation of metal structures (e.g., bonding pads) and pixel edges at the exposed surface of the active image sensing device structure. For example, the bottom antireflection coating reduces scumming and chemical reactions that otherwise might occur at such metal structures and pixel edges as a result of repeated exposure to color filter resist material and color filter developing solutions. In addition, the bottom antireflection coating provides a uniform adhesive surface for the color filter array, substantially eliminating lifting of the color filter array resist structures. In some embodiments, the bottom antireflection coating also improves the optical transmission characteristics of one or more colors of the colors filter array.

In one aspect of the invention, a bottom antireflection coating is formed over an exposed surface of an active image sensing device structure, a color filter array is formed on the bottom antireflection coating, and exposed portions of the bottom antireflection coating are substantially removed.

Embodiments in accordance with this aspect of the invention may include one or more of the following features.

The bottom antireflection coating may comprise a dyed organic film-forming material or a light-absorbing polymeric film-forming material.

The bottom antireflection coating preferably has a thickness that is selected to improve optical transmission characteristics of one or more colors of the color filter array. In addition, the bottom antireflection coating preferably is substantially transmissive to radiation in a wavelength range of about 400 nm to about 700 nm.

In some embodiments, the color filter array comprises a plurality of colored photoresist structures.

Exposed portions of the bottom antireflection coating preferably are removed substantially by a plasma etch process (e.g., a low-power buffered oxygen ash process). The plasma etch process preferably removes the bottom antireflection coating at a substantially higher etch rate than the color filter array.

In some embodiments, the bottom antireflection coating forms a substantially continuous layer over the exposed surface of the active image sensing device structure before exposed portions of the bottom antireflection coating are substantially removed. The bottom antireflection coating may form a protective barrier over metal structures at the exposed surface of the active image sensing device structure during formation of the color filter array.

The active image sensor device structure may be a complementary metal-oxide-semiconductor (CMOS) image sensor or a charged-coupled device (CCD) image sensor.

In another aspect, the invention features an image sensor system that includes an active image sensing device structure, a color filter array, and a bottom antireflection coating that is disposed between the color filter array and a surface of the active image sensing device structure.

Other features and advantages of the invention will become apparent from the following description, including the drawings and the claims.

EXHIBIT 12
8 1

3

## DESCRIPTION OF DRAWINGS

FIG. 1 is a block diagram of a portion of an image sensor system that includes a bottom antireflection coating disposed between a color filter array and a top surface of an active image sensing device structure.

FIG. 2 is a flow diagram of a process of fabricating the image sensor system of FIG. 1.

FIG. 3 is a diagrammatic cross-sectional side view of an image sensor system being formed in accordance with the process of FIG. 2 after an active image sensing device structure has been formed.

FIG. 4 is a diagrammatic cross-sectional side view of an image sensor system being formed in accordance with the process of FIG. 2 after a bottom antireflection coating has been formed over an exposed surface of the active image sensing device structure of FIG. 3.

FIG. 5 is a diagrammatic cross-sectional side view of an image sensor system being formed in accordance with the process of FIG. 2 after a color filter array has been formed on the bottom antireflection coating of FIG. 4 and exposed portions of the bottom antireflection coating have been removed.

## DETAILED DESCRIPTION

In the following description, like reference numbers are used to identify like elements. Furthermore, the drawings are intended to illustrate major features of exemplary embodiments in a diagrammatic manner. The drawings are not intended to depict every feature of actual embodiments nor relative dimensions of the depicted elements, and are not drawn to scale.

Referring to FIG. 1, in one embodiment, an image sensor system 10 includes an active image sensing device structure 12, a color filter array 14, and a bottom antireflection coating (BARC) layer 16 disposed between a top surface of active image sensing device structure 12 and color filter array 14. Image sensor system 10 also includes a passivation layer 18 and a conventional micro lens array 20 that is formed over a passivation layer 18.

Referring to FIGS. 2, 3, 4 and 5, and initially to FIGS. 2 and 3, image sensor system 10 may be formed as follows. An active image sensing device structure 12 initially is formed (step 32). Active image sensing device structure 12 may be a conventional CCD imaging device structure or a conventional CMOS imaging device structure. In general, active image sensing device structure 12 may include an array of pixels, each of which contains a light-sensing element (e.g., a p-i-n photodiode, an n+ to p-subsirate photodiode, a virtual gate buried n-channel photodetector, or a photo-gate detector), and circuitry for driving light signals from the light-sensing elements to other process circuitry.

As shown in FIG. 3, in one embodiment, active image sensing device structure 12 includes a plurality of pixel transistors 34 that are formed on a substrate 36, a number of metallization interconnect levels 38 (not shown individually), and a final metallization level 40. Final metallization level 40 includes a bonding pad 42, a ground contact 44, and a pair of metallization contacts 46, 48. Final metallization level 40 also includes a polished oxide (e.g., silicon oxide) layer 50, a silicon nitride layer 52, and a number of tungsten-filled contact vias 54, 56, 58 extending through oxide and silicon nitride layers 50, 52 down to a respective contact 44–48. A Ti/TiN barrier (or liner) layer 65 may be deposited on the surfaces of contact vias 54–58 before the tungsten plugs are formed. A via 59 is formed

4

through oxide and silicon nitride layers 50, 52 to expose bonding pad 42. A pixel metallization 60, 62 may be formed over each of the tungsten plugs 55, 58 that are connected to metallization contacts 46, 48. Patterned n-type amorphous silicon layers 64, 66 are formed over the pixel metallizations 60, 62. An intrinsic amorphous silicon layer 68 is formed over n-type amorphous silicon layers 64, 66, and a p-type amorphous silicon layer 70 is formed over the intrinsic amorphous silicon layer 68. A transparent conductive layer 72 extends over p-type amorphous silicon layer 70 and contacts the tungsten plug connected to ground contact 44. An opaque metal layer 74 extends over a portion of transparent conductive layer 72 to bridge transparent conductive layer 72 at the ground contact perimeter, blocks light at pixel borders, and surrounds the pixel array.

As shown in FIG. 4, after active image sensing device structure 12 is formed (step 32; FIG. 2), a BARC layer 16 is deposited over an exposed surface of active image sensing device structure 12 (step 76; FIG. 2). In general, BARC layer 16 may be formed from any conventional BARC material, including a dyed organic film-forming BARC material or a light-absorbing polymeric film-forming BARC material. In some embodiments, BARC layer 16 preferably is substantially absorptive of radiation in the wavelength range used to pattern color filter array 14 and is substantially transmissive to radiation in the wavelength range to be imaged by image sensor system 10 (e.g., the visible radiation spectrum). BARC layer 16 may be formed from an organic film-forming material or a polymeric film-forming material. In one embodiment, BARC layer 16 is a photoresist-based antireflective coating that is substantially transmissive to radiation in a wavelength range of about 400 nm to about 700 nm (e.g., a Shipley AR2-600 antireflection coating, which is available from Shipley Company, L. L. C. of Marlborough, Mass., U.S.A.). In this embodiment, BARC layer 16 may be applied by a conventional spin-coater operating at 2000 rpm during deposition and at 4790 rpm during spreading; the resulting BARC layer 16 has a thickness of about 60 nm. After deposition, BARC layer 16 is exposed to a 60 second proximity bake at 205° C. on a DNS track.

In general, BARC layer 16 may have a thickness that is selected to improve the optical transmission characteristics of one or more colors of color filter array 14. In particular, the BARC layer thickness may be selected so that the peak transmission at one or more target radiation wavelengths is increased relative to device structures that do not include BARC layer 16. The target radiation wavelengths may correspond to the wavelengths of peak pixel sensitivity for each color of the color filter set of the completed image sensor system 10. The optical transmission characteristics for each color may be modeled based upon the refraction indices of BARC layer 16 and the other layers of image sensing device structure 12. The thicknesses of BARC layer 16 and the layers of color filter array 14 may be varied within specified thickness ranges until the peak transmissions for one or more of the target radiation wavelengths of the color filter set are optimized. In the illustrated embodiment, it has been discovered that a BARC layer thickness of approximately 60 nm improves the optical transmission characteristics for each of the colors of an RGB color filter array at the target radiation wavelengths of 620 nm for red, 540 nm for green, and 460 nm for blue. In general, the BARC layer thickness should be relatively thin (e.g., less than approximately 200 nm) so that portions of BARC layer 16 may be removed relatively easily to expose bonding pad 42 and other device structures during the BARC layer removal

US 6,765,276 B2

5

process step (described below in connection with process step 90 of FIG. 2).

Referring to FIG. 5, a patterned color filter array 14 is formed on BARC layer 16 (step 82; FIG. 2). BARC layer 16 provides a reliable adhesive surface for the color filter array 14 and, thereby, substantially eliminates lifting of the color filter array resist structures. Color filter array 14 may be a conventional color filter array that is formed from a plurality of colored photoresist structures that are arranged in a pattern of pixel size mosaics or pixel wide stripes. For example, color filter array 14 may be polymer color filter array that is formed by successive deposition of the colored photoresist layers of a particular color set (e.g., red/green/blue or cyan/magenta/yellow). A masking or etching process may be used to form a respective color filter at a selected pixel location. In general, a pixel color filter may be formed from a single polymer layer containing one or several dyes, or by several polymer layers, each of which contains one or more dyes. As shown in FIG. 1, the resulting color filter array 14 includes a distinct, spatially separated filter region 84, 86, 88 for each filter color (e.g., red, green and blue in the illustrated embodiment), each region 84, 86, 88 corresponding to a different color pixel of image sensor system 10. By this arrangement, light at different wavelengths may be sampled separately so that color-separated images may be formed.

As explained above, BARC layer 16 protects exposed areas of the active image sensing device structure 12 during formation of the color filter array 14 and, thereby, preserves the intrinsic transmission characteristics of the active image sensing device structure 12. For example, BARC layer 16 protects sensitive areas of active image sensing device structure 12 against degradation that otherwise might be caused by exposure to the developing solutions that are used to pattern the color filter array 14. The bottom antireflection coating also reduces degradation of metal structures (e.g., bonding pad 42) and pixel edges at the exposed surface of the active image sensing device structure 12. For example, BARC layer 16 reduces scumming and chemical reactions that otherwise might occur at such metal structures and pixel edges as a result of repeated exposure to color filter resist material and color filter developing solutions.

Next, exposed portions of BARC layer 16 are removed (step 90; FIG. 2). BARC layer 16 may be removed in a conventional plasma etch system (e.g., a LAM590 plasma etch system available from LAM Research Corporation of Fremont, Calif.). In one embodiment, a low-power buffered ash (e.g., a He/O₂ ash) may be used to remove BARC layer 16. The plasma etch process preferably removes BARC layer 16 at a substantially higher etch rate than the color filter array 14. It has been discovered that the process of removing portions of BARC layer 16 also improves the optical transmission characteristics of color filter array 14 by removing (or cleaning) portions of color filter array 14 that are stained during formation of color filter array 14. For example, during formation of an RGB color filter array, the array of filters for the first color (e.g., red) that is formed may be stained by the subsequent color resist processing steps that are used to form the filter arrays for the remaining colors (e.g., blue and green). In addition, the array of filters for the

6

second color (e.g., blue) that is formed may be stained by the subsequent color resist processing steps that are used to form the filter array for the remaining color (e.g., green). Such staining reduces the optical transmission through the stained color filter arrays. The process of removing portions of BARC layer 16, however, cleans the surfaces of the stained color filter arrays and, thereby, improves their optical transmission characteristics.

Additional structures, including passivation layer 18 and micro lens array 20, may be formed after the exposed portions of BARC layer 16 have been removed (step 92; FIG. 2). These additional structures may be formed in accordance with conventional device fabrication processes.

Other embodiments are within the scope of the claims.

What is claimed is:

1. An image sensor system, comprising:

an active image sensing device structure comprising an array of light sensing elements;

a color filter array comprising an array of color filters each disposed over a respective light sensing element, wherein light travels from each color filter to a respective light sensing element through a respective light transmission path substantially transmissive to radiation in a visible wavelength range; and

a bottom antireflection coating disposed in each light transmission path between the color filter array and the active image sensing device structure, wherein the bottom antireflection coating has a thickness less than approximately 200 nm.

2. The system of claim 1, wherein the bottom antireflection coating comprises a dyed organic film-forming material.

3. The system of claim 1, wherein the bottom antireflection coating comprises a light-absorbing polymeric film-forming material.

4. The system of claim 1, wherein the bottom antireflection coating has a thickness selected to improve an optical transmission characteristic of one or more colors of the color filter array.

5. The system of claim 1, wherein the bottom antireflection coating is substantially transmissive to radiation in a wavelength range of about 400 nm to about 700 nm.

6. The system of claim 1, wherein the color filter array comprises a plurality of colored photoresist structures.

7. The system of claim 1, wherein the bottom antireflection coating has a substantially higher plasma etch rate than the color filter array.

8. The system of claim 1, wherein the active image sensor device structure comprises a complementary metal-oxide-semiconductor (CMOS) image sensor.

9. The system of claim 1, wherein the bottom antireflection coating has a thickness of about 60 nm.

10. The system of claim 1, wherein the bottom antireflection coating is present only in regions directly under color filter array material.

11. The system of claim 1, wherein the color filter array is formed directly on bottom antireflection coating material.

\* \* \* \* \*

EXHIBIT 12