Daniel J. O'Connor (motion for *pro hac vice* pending)
Omar Galaria (motion for *pro hac vice* pending)
**Baker & McKenzie LLP**
300 E. Randolph Street
Chicago, IL 60601
Telephone: +1 312 861 8000
Facsimile:  +1 312 925 7153
Daniel.O'Connor@bakermckenzie.com
Omar.Galaria@bakermckenzie.com

Todd G. Friedland (SBN 187022)
**Stephens Friedland LLP**
4695 MacArthur Court, Suite 310
Newport Beach, CA 92660
Telephone: +1 949.468.3200
Facsimile: +1 949.468.3201
todd@sf-lawyers.com

*Attorneys for Non-Party Himax Imaging Corp.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ASUS COMPUTER INTERNATIONAL,<br><br>Plaintiff,<br><br>v.<br><br>ROUND ROCK RESEARCH, LLC,<br><br>Defendant. | **CASE NO.: CV13-02176 SJO (FFMx)**<br><br>**Magistrate Frederick F. Mumm**<br><br>**Related Action Pending in the United States Court for the Northern District of California (3:12-cv-2099)**<br><br>**DISCOVERY MATTER** |
| ROUND ROCK RESEARCH, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ASUSTEK COMPUTER INC. and ASUS COMPUTER INTERNATIONAL,<br><br>Defendants. | **DECLARATION OF LAUREN M. NOWIERSKI IN SUPPORT OF JOINT STIPULATION PURSUANT TO LOCAL CIVIL RULES 45 AND 37 RELATING TO HIMAX IMAGING'S OBJECTIONS TO ROUND ROCK's SUBPOENA *DUCES TECUM***<br><br>Date:           May 14, 2013<br>Time:          10:00 a.m.<br>Courtroom:  E<br>Judge:         Frederick F. Mumm |

1
2
3

### DECLARATION OF LAUREN M. NOWIERSKI

4       I, Lauren M. Nowierski, declare:

5       I am an attorney with the law firm Desmarais LLP, counsel for Round Rock
6   Research, LLC in the underlying matter. I have personal knowledge of the facts set
7   forth herein.

8       1.      Attached hereto as Exhibit A is a true and correct copy of Round Rock
9   Research, LLC's Subpoena *Duces Tecum* ("the subpoena") that was served on Himax
10  Imaging on or about January 7, 2013.

11      2.      Attached hereto as Exhibit B is a true and correct copy of excerpts from
12  Round Rock's First Set of Interrogatories to ASUS (Nos. 1-11) that was served on
13  ASUS on or about October 5, 2012.

14      3.      Attached hereto as Exhibit C is a true and correct copy of a letter dated
15  November 8, 2012 from Goldie Wilder of Perkins Coie (ASUS's counsel in the
16  underlying matter) to Mr. Paul Bondor of Desmarais LLP enclosing produced
17  documents.

18      4.      Attached hereto as Exhibit D is a true and correct copy of a page from
19  Himax Imaging's website, available at: http://www.himaximaging.com/company/
20  (last accessed Mar. 21, 2013).

21      5.      Attached hereto as Exhibit E is a true and correct copy of an email I sent
22  on January 14, 2013 to Daniel J. O'Connor extending the return date for the subpoena
23  to March 14, 2013.

24      6.      Attached hereto as Exhibit F is a true and correct copy of a letter dated
25  January 21, 2013 that I received from Daniel J. O'Connor regarding Himax Imaging's
26  objections to Round Rock's January 7 subpoena (Ex. A).

27      7.      Attached hereto as Exhibit G is a true and correct copy of U.S. Patent No.
28  6,765,276.

1

I declare under penalty of perjury that the foregoing is true and correct. Executed on Thursday, March 21, 2013, in New York, New York.

Lauren M. Nowierski

# EXHIBIT A

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | | |
|---|---|---|
| ASUS COMPUTER INTERNATIONAL | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  3:12-cv-0299-WHA |
| ROUND ROCK RESEARCH LLC | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Northern District of California    ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Himax Imaging Incorporated (Himax Imaging Corp.), 36 Discovery, Suite 270, Irvine, CA 92618;
Reg. Agent: Peggy Y. Chau, 28 Calais, Irvine, CA 92602

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place:  TransPerfect Translations<br>2049 Century Park East<br>Suite 310, Los Angeles, CA 90067 (tel: 310.286.2600) | Date and Time:<br>01/31/2013 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: 01-07-2013

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                  *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*  Round Rock Research LLC
_____ , who issues or requests this subpoena, are:

Lauren M. Nowierski
Desmarais LLP
230 Park Avenue, New York, NY 10169,  (212) 351-3400

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  3:12-cv-0299-WHA

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                            *Server's signature*

                                            _____
                                            *Printed name and title*

                                            _____
                                            *Server's address*

Additional information regarding attempted service, etc:

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## SCHEDULE A TO CIVIL SUBPOENA

### INTRODUCTION

For a statement of your obligation in producing documents under this subpoena, see Rule 45(d)(l) and (2) of the Federal Rules of Civil Procedure, which appears on the final page of the subpoena.

### DEFINITIONS AND INSTRUCTIONS

1. "Himax," "You," or "Your" means Himax Imaging Incorporated and all predecessors, subsidiaries, joint ventures, parents, affiliates, and other legal entities that are wholly or partially owned or controlled by Himax, either directly or indirectly, and including but not limited to *all* past or present directors, officers, agents, employees, consultants, attorneys, and others acting on behalf of these same entities.

2. As used herein, "Round Rock" means Round Rock Research, LLC.

3. As used herein, "Plaintiff" means ASUSTeK Computer, Inc. and ASUS Computer International.

4. As used herein, "this Action" means *ASUS Computer International v. Round Rock Research, LLC* and *Round Rock Research, LLC v. ASUSTeK Computer, Inc. and ASUS Computer International*, Civil Action No. 3:12-cv-02099-WHA, in the United States District Court for the Northern District of California.

5. As used herein, "Product" means any Himax image sensor, which You either manufacture(d), sell, sold, or offered to sell to Plaintiff since 2005, or which Plaintiff has in any other way procured through You directly or via any other entity, including but not limited to the Himax HM2050 image sensor and the RTS520D PC camera application controller.

6. "Person" means any natural person or individual, and any and *all* legal entities, including without limitation, corporations, companies, firms, partnerships, joint ventures, proprietorships, associations, governmental bodies or agencies, or other form of business enterprise.

7. As used herein, "communication" means any transmission of information by one or more persons and/or between two or more persons by any means, including telephone conversations, letters, telegrams, teletypes, telexes, telecopies, electronic mail, other computer linkups, written memoranda, and face-to-face conversations.

8. As used herein, "and" and "or" shall be construed conjunctively and disjunctively, so as to acquire the broadest possible meaning.

9. The term "any" includes "all," and the term "all" includes "any," and the terms "any" and "all" shall each be construed to mean "each and every," so as to acquire the broadest possible meaning.

10. As used herein, "include" and "including" shall be construed to mean "without limitation," so as to acquire the broadest possible meaning.

11. The singular of any term includes the plural of that term, and the plural includes the singular.

12. The singular and masculine form of a noun or pronoun shall embrace, and shall be read and applied as, the plural or the feminine or neuter, as the particular context makes appropriate and to give the noun or pronoun the broadest possible meaning.

13. As used herein, "relating to" means, without limitation, identifying, describing, discussing, concerning, assessing, stating, reflecting, constituting, containing, embodying, tending to support or refute, or referring directly or indirectly to the particular subject matter identified.

14. The term "concerning" means identifying, referring to, concerning, regarding evidencing, demonstrating, summarizing, reflecting, constituting, containing, embodying, mentioning, pertaining to, commenting upon, connected with, discussing, describing, analyzing, showing, comprising, or relating to in any relevant way to a particular subject, in whole or in part, either directly or indirectly.

15. The document requests herein shall be deemed to include any and all relevant documents within the possession, custody or control of Himax, including documents located in the files of any and all past and present association members, subsidiaries, parents, sisters, partnerships, directors, officers, agents, representatives, employees, attorneys, and accountants of Himax.

16. "Document" shall have the broadest meaning and scope ascribed under Rule 34 of the Federal Rules of Civil Procedure, and include all tangible things which come within the meaning of the terms "writings and recordings"" as used in Federal Rule of Evidence 1001 and all electronically stored information. A draft or non-identical copy is a separate document within the meaning of this term.

17. If, after conducting a reasonable investigation, a full answer cannot be provided for any request for the production of documents, state that such is the case and answer to the fullest extent possible, stating what responsive documents or information are available, what documents or information cannot be provided, why the documents or information are unavailable, and what efforts were made to obtain the unavailable documents or information.

18. If any of the documents requested herein are no longer in your possession, custody or control, you shall identify each such requested document by date, type of document, person(s) from whom sent, person(s) to whom sent, and person(s) receiving copies, and to provide a summary of its pertinent contents.

19. If any document responsive to these requests has been destroyed, describe the content of such document, the location of any copies of such document, and the date of such destruction.

## DOCUMENTS TO BE PRODUCED

1. Documents sufficient to show all sales of any of the Products to the Plaintiff, or procurement of any of the Products by the Plaintiff from You, including but not limited to sales records, shipment records, and bills of lading.

2. Documents sufficient to illustrate and explain the manufacture or fabrication of any of the Products, including but not limited to manuals, schematics, user guides, technical specifications, technical reports, and CMP recipes.

3. Documents sufficient to show the operation and use of any of the Products, including but not limited to manuals, schematics, user guides, technical specifications, and technical reports.

4. Documents sufficient to show the architecture of the Products sold to Plaintiff.

5. Documents sufficient to identify all names of all the Products, including internal working names, external names, commercially used names, and code names.

6. Documents sufficient to identify the locations relating to the design, assembly, fabrication, and manufacture of any of the Products.

7. Documents sufficient to show the process by which any materials, ingredients, or components (including but not limited to any wafers or semiconductors) are employed, used, or assembled in the manufacturing or fabrication process of any Product, including but not limited to any image sensor.

8.  Documents sufficient to show the training of any Person involved in the process of manufacturing the Products, including but not limited to the processes of chemical mechanical polishing (CMP), dry etching, metals deposition, any type of chemical vapor deposition (CVD), photolithography, ion implantation, plasma deposition, and ion milling.

9.  Documents sufficient to identify the manufacturers of any equipment used in any process relating to the manufacture, assembly, or fabrication of any Product (including any image sensor), including but not limited to the processes of CMP, dry etching, metals deposition, any type of CVD, photolithography, ion implantation, plasma deposition, and ion milling.

10. All communications between Plaintiff and You relating to Round Rock.

11. All communications between Plaintiff and You relating to the Products.

12. All communications between Plaintiff and You relating to this Action.

13. Documents and communications regarding any request for indemnification by Plaintiff in connection with patent infringement claims asserted by Round Rock.

14. Documents sufficient to show Your marketing, advertising, or promotion of the Products.

15. All documents relating to market demand for the Products including, but not limited to, market studies, technical reports, consultant reports, surveys, and any reports or studies relating to customer demand of any Product features or decisions to include or exclude any such features for any Product.

# EXHIBIT B

1   BLACK CHANG & HAMILL LLP
    Bradford J. Black (SBN 252031)
2   bblack@bchllp.com
    Peter H. Chang (SBN 241467)
3   pchang@bchllp.com
    4 Embarcadero Center, Suite 1400
4   San Francisco, California 94111
    Telephone: 415-813-6210
5   Facsimile: 415-813-6222

6   DESMARAIS LLP
    Paul A. Bondor (admitted *pro hac vice*)
7   pbondor@desmaraisllp.com
    Jonas R. McDavit (admitted *pro hac vice*)
8   jmcdavit@desmaraisllp.com
    Lauren M. Nowierski (admitted *pro hac vice*)
9   lnowierski@desmaraisllp.com
    230 Park Avenue
10  New York, NY 10169
    (212) 351-3400 (Telephone)
11  (212) 351-3401 (Facsimile)

12  *Attorneys for Defendant and Counterclaim Plaintiff*

13              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
14
                SAN FRANCISCO DIVISION
15

| | |
|---|---|
| 16 ASUS COMPUTER INTERNATIONAL, ) | |
| 17    *Plaintiff*, ) | Civil Action No. 3:12-cv-02099-WHA |
| 18    v. ) | JURY TRIAL DEMANDED |
| 19 ROUND ROCK RESEARCH, LLC, ) | |
| 20    *Defendant.* ) | |
| 21 ROUND ROCK RESEARCH, LLC, ) | |
| 22    *Counterclaim Plaintiff*, ) | |
| 23    v. ) | |
| 24 ASUSTEK COMPUTER INC. AND ) ASUS COMPUTER INTERNATIONAL, ) | |
| 25    *Counterclaim Defendants.* ) | |
| 26 | |

27

28

1  **ROUND ROCK RESEARCH'S FIRST SET OF INTERROGATORIES TO ASUS (NOS. 1-11)**

2     Pursuant to Federal Rule of Civil Procedure 33 and Local Rule 33-1, Plaintiff Round Rock

3  Research, LLC ("Round Rock") hereby requests that Defendants ASUSTeK Computer Inc. and

4  ASUS Computer International (collectively, "ASUS") answer under oath the following

5
   Interrogatories.
6

7                          **DEFINITIONS**

8  1.     As used herein, "Round Rock" means Round Rock Research, LLC.

9  2.     As used herein, "person" means any natural person or any business, legal, or governmental
   entity or association.
10

11 3.     As used herein, "ASUS," "You," and "Your" means ASUSTeK Computer, Inc. and ASUS
   Computer International as well as any and all past or present directors, officers, agents, employees,
12 attorneys, consultants, divisions, subsidiaries, affiliates, successors-in-interest, predecessors, or other
   persons acting or purporting to act for, or on behalf of, ASUS.
13

14 4.     As used herein, "this Action" means on *ASUS Computer International v. Round Rock
   Research, LLC* and *Round Rock Research, LLC v. ASUSTeK Computer, Inc. and ASUS Computer
15 International*, Civil Action No. 3:12-cv-02099-WHA, in the United States District Court for the
   District of Northern California.

16 5.     As used herein, "Patents-in-Suit" means United States Patent Nos. 6,570,791 ("the '791
17 patent"); 6,765,276 ("the '276 patent"); 6,845,053 ("the '053 patent"); 6,930,949 ("the '949 patent");
   7,021,520 ("the '520 patent"); and 7,279,353 ("the '353 patent").
18

19 6.     As used herein, "Accused Product(s)" means the product categories described in Round
   Rock's Counterclaims (D.I. 8) including but not limited to the products listed in Exhibit 1 to Round
20 Rock Research LLC's Disclosure of Asserted Claims and Infringement Contentions Pursuant to
   Patent Local Rules 3-1 & 3-2 served in this action on September 20, 2012.

21 7.     As used herein, "Prior Art" has the same meaning as used in 35 U.S.C. § 101 *et seq*., and
22 includes any patent, printed publication, knowledge, use, sale or offer for sale, or other act or event
   defined in 35 U.S.C. §§ 102 or 103, taken singly or in combination.
23

24 8.     As used herein, "communication" means any transmission of information by one or more
   persons and/or between two or more persons by any means, including telephone conversations,
25 letters, telegrams, teletypes, telexes, telecopies, electronic mail, other computer linkups, written
   memoranda, and face-to-face conversations.

26 9.     As used herein, "and" and "or" shall be construed conjunctively and disjunctively, so as to
27 acquire the broadest possible meaning.

28

limited to, any code names, PIDs, development names, or other internal identifiers; (c) the place(s) of manufacture and/or final assembly for such products; (d) the name of the entity or business units (including by not limited to subsidiaries, parents, affiliates, divisions) that made such products; and (e) identify the manufacturer name and model number for the eMMC flash memory.

**INTERROGATORY NO. 4.**

Identify each and every ASUS product containing Double Data Rate 3 ("DDR3") memory, including but not limited to the Accused Products, which were made, used, licensed, distributed, sold, or offered for sale inside or outside the United States, or imported into the United States, by or for ASUS since May 18, 2006, including the following information for each: (a) the date each ASUS product listed therein was first offered or provided to customers, and to the extent it is no longer offered or provided to customers, the last date it was offered or provided, (b) the designation (*i.e.*, name, model number and serial number, if any) of each product, including, but not limited to, any code names, PIDs, development names, or other internal identifiers; (c) the place(s) of manufacture and/or final assembly for such products; (d) the name of the entity or business units (including by not limited to subsidiaries, parents, affiliates, divisions) that made such products; and (e) identify the manufacturer name and model number for the DDR3 memory.

**INTERROGATORY NO. 5.**

Identify each and every ASUS product containing a complementary-metal-oxide-semiconductor ("CMOS") image sensor, including but not limited to the Accused Products, which were made, used, licensed, distributed, sold, or offered for sale inside or outside the United States, or imported into the United States, by or for ASUS since May 18, 2006, including the following information for each: (a) the date each ASUS product listed therein was first offered or provided to customers, and to the extent it is no longer offered or provided to customers, the last date it was offered or provided, (b) the designation (*i.e.*, name, model number and serial number, if any) of each product, including, but not limited to, any code names, PIDs, development names, or other internal identifiers; (c) the place(s) of manufacture and/or final assembly for such products; (d) the name of the entity or business units (including by not limited to subsidiaries, parents, affiliates, divisions) that made such products; and (e) identify the manufacturer name and model number for the CMOS image sensor.

**INTERROGATORY NO. 6.**

Separately for each Accused Product or any other ASUS product identified in ASUS's responses to Interrogatory Nos. 3-5, identify all factual and legal bases for ASUS's contention that each such product does not infringe the Patents-in-Suit directly (either literally or under the doctrine of equivalents) and/or indirectly (either by inducement or contributory infringement).

**INTERROGATORY NO. 7.**

Separately for each Accused Product and any other products identified in ASUS's responses to Interrogatory Nos. 3-5, state all revenues and the sources thereof (including sales, subscription, assessment, design, deployment, support, licensing, and maintenance revenues) derived by ASUS, by month, from May 18, 2006 to the present, including gross profits, net profits, gross revenue, net revenue, and units sold.

1

# CERTIFICATE OF SERVICE

2

The undersigned hereby certifies that on the 5th day of October, 2012, the foregoing Round

3 Rock Research's First Set of Interrogatories to ASUS (Nos. 1-11) was caused to be served by electronic mail on the following:

4

5

John P. Schnurer
Cheng (Jack) Ko

6 Michael J. Engle
PERKINS COIE LLP

7 11988 El Camino Real, Suite 200
San Diego, CA 92130-3334

8 Tel: (858) 720-5700
JSchnurer@perkinscoie.com

9 Jko@ perkinscoie.com
Mengle@perkinscoie.com

10

11 James C. Pistorino
PERKINS COIE LLP

12 3150 Porter Drive
Palo Alto, CA 94304-1212

13 Tel: (650)838-4300
Jpistorino@perkinscoie.com

14

15 Dated: October 5, 2012                    /s/ Lauren M. Nowierski

16                                           Lauren M. Nowierski

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT C



11988 El Camino Real, Suite 200
San Diego, CA 92130-3334
PHONE: 858.720.5700
FAX: 858.720.5799
www.perkinscoie.com

Goldie Wilder
PHONE: (858) 720-5704
EMAIL: GWilder@perkinscoie.com

**NOVEMBER 8, 2012**

**VIA FTP**

Paul A. Bondor
DESMARAIS LLP
230 Park Avenue
New York, NY 10169

> **Re:    ASUS Computer International et al v. Round Rock Research, LLC
>         Case No. 5:12-cv-02099-WHA**

Dear Mr. Bondor:

Please find enclosed documentation bearing Bates numbers ASUS-RR3-0000001 through
ASUS-RR3-000 3315.

If you have any questions, please feel free to contact our office.

Very truly yours,

Goldie Wilder
Paralegal

Enclosure

# EXHIBIT D

Login | Register

Search...

Home   Company   Products   Gallery   Support   News   Contact

# COMPANY OVERVIEW
# COMPACT IMAGE SENSOR SOLUTIONS DESIGNED
# FOR PERFORMANCE, VALUE AND SIMPLICITY

Himax Imaging is a fabless semiconductor company that develops CMOS Image Sensors (CIS), System-on-Chip (SOC) and wafer level camera solutions for next generation camera, video communication and sensing applications. As a relative newcomer in the CIS industry, Himax Imaging has quickly developed a broad portfolio of products and technologies that have been adopted by leading mobile computing and communication device manufacturers.

Our approach towards sensor is to enable our customers to quickly bring quality camera products to market with imaging solutions designed for performance, value and simplicity. As we look forward, this is an exciting time for imaging industry as technology and manufacturing barriers are constantly pushed to deliver new levels of performance and features. Look for Himax Imaging to continue bringing new and exciting products to market.

Quick Facts

- Incorporated in 2007

- Subsidiary of Himax Technologies, Incorporated

- Headquartered in Hsinchu, Taiwan

- U.S. (California) Design Center

- Sales and support office in Taiwan, United States, and China (Shenzhen, Shanghai)

- ISO9001 certified in 2008

- Qualified supplier by leading device manufacturers

- Volume production starting 2009

Home   Company   Products   Gallery   News   Contact Form   Contact   Legal                                   TOP |

Copyright 2012 Himax Imaging Inc - All rights Reserved

# EXHIBIT E

**From:** Lauren Nowierski
**Sent:** Monday, January 14, 2013 3:48 PM
**To:** 'O'Connor, Daniel J'
**Subject:** RE: ASUS Computer Int'l. v Round Rock Research LLC

Dan,

It was nice speaking with you as well. I confirm that we have agreed to an extension of the return date on the Himax Imaging subpoena to March 14, 2013.

Kind regards,
Lauren

Lauren M. Nowierski
**Desmarais** LLP
230 Park Avenue
New York, NY 10169
D: (212) 351-3426
M: (212) 351-3400
F: (212) 351-3401
lnowierski@desmaraisllp.com

**From:** O'Connor, Daniel J [mailto:Daniel.O'Connor@bakermckenzie.com]
**Sent:** Monday, January 14, 2013 3:12 PM
**To:** Lauren Nowierski
**Subject:** ASUS Computer Int'l. v Round Rock Research LLC

Hello Lauren,

It was nice talking to you just now. This is to confirm an extension of the return date on the subpoena served on Himax Imaging by six weeks, to March 14, 2013. Please send a return email confirming this.

Thanks,

Dan

Daniel J. O'Connor
Baker & McKenzie
300 E. Randolph Street
Chicago, Illinois 60601
ph 312 861 2790

Pursuant to requirements related to practice before the Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purposes of (i) avoiding penalties imposed under the United States Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message. Please visit www.bakermckenzie.com/disclaimers for other important information concerning this message.

# EXHIBIT F

Baker & McKenzie LLP

300 East Randolph Street, Suite 5000
Chicago, IL 60601
United States

Tel: +1 312 861 8000
Fax: +1 312 861 2899
www.bakermckenzie.com

Asia Pacific
Bangkok
Beijing
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta*
Kuala Lumpur*
Manila*
Melbourne
Shanghai
Singapore
Sydney
Taipei
Tokyo

Europe, Middle East
& Africa
Abu Dhabi
Almaty
Amsterdam
Antwerp
Bahrain
Baku
Barcelona
Berlin
Brussels
Budapest
Cairo
Casablanca
Doha
Dusseldorf
Frankfurt/Main
Geneva
Istanbul
Johannesburg
Kyiv
London
Luxembourg
Madrid
Milan
Moscow
Munich
Paris
Prague
Riyadh
Rome
St. Petersburg
Stockholm
Vienna
Warsaw
Zurich

Latin America
Bogota
Brasilia*
Buenos Aires
Caracas
Guadalajara
Juarez
Lima
Mexico City
Monterrey
Porto Alegre*
Rio de Janeiro*
Santiago
Sao Paulo*
Tijuana
Valencia

North America
Chicago
Dallas
Houston
Miami
New York
Palo Alto
San Francisco
Toronto
Washington, DC

* Associated Firm

January 21, 2013

Lauren M. Nowierski
Desmarais LLP
230 Park Avenue
New York, NY 10169

By email/confirmation by U.S. Mail

### ASUS Computer International v. Round Rock Research LLC

Dear Ms Nowierski,

We represent Himax Imaging Corp. ("Himax Imaging"), in connection with the subpoena ("the Subpoena") directed to Himax Imaging in the above-captioned case. Herein we state objections on behalf of Himax Imaging, pursuant to F.R.Civ. Proc.45.

We object to the extent the Subpoena seeks to discover documents or information that is the subject of the attorney-client privilege, the work-product privilege, the joint defense privilege, or any other applicable privilege. Himax Imaging expressly preserves and does not waive any and all privileges that are applicable to any documents or information that are sought to be discovered by the Subpoena.

We object to the extent the Subpoena seeks to discover documents or information that is not in the "possession, custody, or control" of Himax Imaging, as authorized by F.R.Civ.Proc. 45(a)(1)(A)(iii). Specifically, the Subpoena seeks to compel production of documents in the possession, custody or control not only of Himax Imaging, but also of other entities. We note and object to in particular, in this regard, the Subpoena's "Definitions and Instructions" number 1.

We object to the extent the Subpoena seeks to compel Himax Imaging to do anything beyond producing responsive, non-privileged documents, as allowed by F.R.Civ.Proc. 45. We note and object to, in particular, in this regard, the Subpoena's "Definitions and Instructions" numbered 17-19.

We object to the extent the Subpoena seeks to compel production of documents that are not relevant to the subject matter of the pending action or not reasonably calculated to lead to the discovery of admissible evidence. See *Epstein v. MCA*, 54 F3d 1422, 1424 (9th Cir. 1995); *Mailhoit v Home Depot USA, Inc.*, 285 F.R.D. 566 (CDCA 2012). Based on the complaint and the asserted patents, it appears that the relevant products, as could potentially relate to Himax, would include only the Himax HM2050. If you believe the case presently includes as relevant products applicable to Himax any other products, please advise and provide support for this position. We note and object to, in particular

in this regard, the definition of "Product" as stated in item 6 of  "Definitions and Instructions".

We object to the extent the Subpoena seeks discovery of documents "sufficient to show" or "sufficient to identify" as being overly broad and vague and failing to describe the documents to be produced with "reasonable particularity," pursuant to F.R.Civ. Proc. 34(b)(1)(A). We note and object to, in particular in this regard, items numbered 1-9 and 14.

We object further to items 14 and 15 as vague and overly broad by referring to documents relating to such terms, for example, as "market demand", "marketing", "promotion."

If you have any questions or comments on these objections, please feel free to contact me and we can discuss them.


Regards,


Daniel J. O'Connor
Partner
312 861 2790
daniel.oconnor@bakermckenzie.com

2

# EXHIBIT G

US006765276B2

(12) **United States Patent**
Fasen et al.

(10) Patent No.:  **US 6,765,276 B2**
(45) Date of Patent:  **Jul. 20, 2004**

(54) BOTTOM ANTIREFLECTION COATING COLOR FILTER PROCESS FOR FABRICATING SOLID STATE IMAGE SENSORS

(75) Inventors: Duane Fasen, Loveland, CO (US); Jack D. Meyer, Fort Collins, CO (US); Cheryl Bailey, Fort Collins, CO (US); John H. Stanback, Fort Collins, CO (US); Karl Hansen, Fort Collins, CO (US)

(73) Assignee: Agilent Technologies, Inc., Palo Alto, CA (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: 09/938,394

(22) Filed: Aug. 23, 2001

(65) Prior Publication Data

US 2003/0038293 A1 Feb. 27, 2003

(51) Int. Cl.$^7$ .......................... H01L 29/18; H01L 33/00; H01L 31/0232; H01L 31/00

(52) U.S. Cl. ...................... 257/437; 257/440; 257/436; 257/443; 257/88

(58) Field of Search ............................. 257/79, 80, 81, 257/82, 91, 98, 88, 89, 431, 432, 435, 436, 437, 440

(56) References Cited

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,782,009 A | | 11/1988 | Belon et al. |
| 4,855,199 A | | 8/1989 | Belon et al. |
| 5,258,608 A | | 11/1993 | Uchiya |
| 5,266,501 A | | 11/1993 | Imai |
| 5,654,202 A | * | 8/1997 | Daly et al. ..................... 438/70 |
| 5,990,506 A | | 11/1999 | Fossum et al. |
| 6,048,662 A | | 4/2000 | Bruhnke et al. |
| 6,060,732 A | * | 5/2000 | Murakami et al. .......... 257/215 |

| | | | |
|---|---|---|---|
| 6,106,995 A | * | 8/2000 | Dixit et al. ................ 430/270 |
| 5,184,055 B1 | * | 2/2001 | Yang et al. ................... 438/57 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| JP | 11-103037 | 4/1999 |
| WO | WO 97/46915 | 12/1997 |

OTHER PUBLICATIONS

"Production metrology and control of color filter array photolithography for CMOS imagers," SPIE vol. 3677, pp. 326–337 (1999).

"Color filter array for CCD and CMOS image sensors using a chemically amplified, thermally cured, pre–dyed, positive–tone photoresist for 365 nm lithography," SPIE vol. 3678, pp. 1083–1090 (1999).

"Advanced complementary color filter technology without dyeing process for CCD image sensors," SPIE vol. 3333, pp. 1232–1240 (1998).

* cited by examiner

Primary Examiner—Nathan J. Flynn
Assistant Examiner—Victor A. Mandala, Jr.

(57) **ABSTRACT**

An image sensor system and methods of making such a system are described. The image sensor system includes a color filter array that is formed by a color filter process that incorporates a bottom antireflection coating. The bottom antireflection coating forms a protective layer that protects exposed areas of the active image sensing device structure during formation of the color filter array and, thereby, preserves the intrinsic transmission characteristics of the active image sensing device structure. The bottom antireflection coating also reduces degradation of metal structures (e.g., bonding pads) and pixel edges at the exposed surface of the active image sensing device structure. In addition, the bottom antireflection coating provides a reliable adhesive surface for the color filter array, substantially eliminating lifting of the color filter array resist structures. In some embodiments, the bottom antireflection coating also improves the optical transmission characteristics of one or more colors of the colors filter array.

**11 Claims, 4 Drawing Sheets**



**U.S. Patent**    Jul. 20, 2004    Sheet 1 of 4    US 6,765,276 B2



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5

US 6,765,276 B2

1

## BOTTOM ANTIREFLECTION COATING COLOR FILTER PROCESS FOR FABRICATING SOLID STATE IMAGE SENSORS

### TECHNICAL FIELD

This invention relates to solid state image sensors that include color filter arrays that are formed by a bottom antireflection coating (BARC) color filter process, and methods of making the same.

### BACKGROUND

In general, digital imaging systems, such as digital cameras, include image sensors (or simply imagers) for capturing images. Various types of image sensors have been developed, including charge-coupled device (CCD) image sensors and complementary metal-oxide semiconductor (CMOS) image sensors. These devices typically include an array of pixels, each of which contains a light-sensing element, such as an n+ to p-substrate photodiode, a virtual gate buried n-channel photodetector, or a photo-gate detector, which defines a light-sensing region of an image sensor. Image sensors may also include circuitry for driving light signals from the light-sensing elements to other process circuitry. CCD image sensors typically include a photoelectric converter and charge accumulator for absorbing light from an object and collecting photo-generated charges into signal charge packets. In addition, CCD image sensors may include a charge transfer region for conveying charge packets from the photoelectric converter and charge accumulator, and a charge-to-voltage signal converter for generating a voltage output corresponding to the signal charge packets that are transferred through the charge transfer region. CMOS image sensors typically include an array of active pixel sensors and a row (register) of correlated double-sampling (CDS) amplifiers that sample and hold the output of a given row of pixel sensors. In both CMOS and CCD image sensor systems, each pixel sensor accumulates charge during an optical integration period in accordance with the light intensity reaching the relevant sensing area of the pixel sensor.

In color applications, each pixel sensor element typically receives light through a color filter that allows only a relatively narrow radiation wavelength range (e.g., the visible spectrum) to reach the pixel sensors of the image sensor. Multiple sets of color filters typically are arranged in a pattern of pixel size mosaics or pixel wide stripes. The color filters may be applied directly to the surface of an image sensor. Alternatively, the color filters may be formed on a passivation layer (see, e.g., U.S. Pat. No. 5,654,202), in which case a separate masking step is required to expose the bonding pads of the image sensor. The color filters typically are formed from a photoresist structure that includes a layer for each filter color. A common color filter material is spin coated-, dyed-, or pigmented-photoresist. The filter colors for a given color filter set may be additive (e.g., red, green, blue) or subtractive (e.g., cyan, magenta, yellow), or a combination of both additive and subtractive.

The light collecting efficiency of an image sensor may be improved by depositing a micro lens array over the CFA material of each pixel region. A planarization layer that is highly transmissive in the imaging wavelength range also may be deposited between the color filter array and the micro lens material.

### SUMMARY

The invention features a novel image sensor system and methods of making such a system. In particular, the novel

2

image sensor system includes a color filter array that is formed by an inventive color filter process that incorporates a bottom antireflection coating. The bottom antireflection coating forms a protective layer that protects exposed areas of the active image sensing device structure during formation of the color filter array and, thereby, preserves the intrinsic transmission characteristics of the active image sensing device structure. For example, the bottom antireflection coating protects sensitive areas of the active image sensing device structure against degradation that otherwise might be caused by exposure to developing solutions that are used to pattern the color filter array. The bottom antireflection coating also reduces degradation of metal structures (e.g., bonding pads) and pixel edges at the exposed surface of the active image sensing device structure. For example, the bottom antireflection coating reduces scumming and chemical reactions that otherwise might occur at such metal structures and pixel edges as a result of repeated exposure to color filter resist material and color filter developing solutions. In addition, the bottom antireflection coating provides a uniform adhesive surface for the color filter array, substantially eliminating lifting of the color filter array resist structures. In some embodiments, the bottom antireflection coating also improves the optical transmission characteristics of one or more colors of the colors filter array.

In one aspect of the invention, a bottom antireflection coating is formed over an exposed surface of an active image sensing device structure, a color filter array is formed on the bottom antireflection coating, and exposed portions of the bottom antireflection coating are substantially removed.

Embodiments in accordance with this aspect of the invention may include one or more of the following features.

The bottom antireflection coating may comprise a dyed organic film-forming material or a light-absorbing polymeric film-forming material.

The bottom antireflection coating preferably has a thickness that is selected to improve optical transmission characteristics of one or more colors of the color filter array. In addition, the bottom antireflection coating preferably is substantially transmissive to radiation in a wavelength range of about 400 nm to about 700 nm.

In some embodiments, the color filter array comprises a plurality of colored photoresist structures.

Exposed portions of the bottom antireflection coating preferably are removed substantially by a plasma etch process (e.g., a low-power buffered oxygen ash process). The plasma etch process preferably removes the bottom antireflection coating at a substantially higher etch rate than the color filter array.

In some embodiments, the bottom antireflection coating forms a substantially continuous layer over the exposed surface of the active image sensing device structure before exposed portions of the bottom antireflection coating are substantially removed. The bottom antireflection coating may form a protective barrier over metal structures at the exposed surface of the active image sensing device structure during formation of the color filter array.

The active image sensor device structure may be a complementary metal-oxide-semiconductor (CMOS) image sensor or a charged-coupled device (CCD) image sensor.

In another aspect, the invention features an image sensor system that includes an active image sensing device structure, a color filter array, and a bottom antireflection coating that is disposed between the color filter array and a surface of the active image sensing device structure.

Other features and advantages of the invention will become apparent from the following description, including the drawings and the claims.

US 6,765,276 B2

<table>
<tr><td>3</td><td>4</td></tr>
</table>

## DESCRIPTION OF DRAWINGS

FIG. 1 is a block diagram of a portion of an image sensor system that includes a bottom antireflection coating disposed between a color filter array and a top surface of an active image sensing device structure.

FIG. 2 is a flow diagram of a process of fabricating the image sensor system of FIG. 1.

FIG. 3 is a diagrammatic cross-sectional side view of an image sensor system being formed in accordance with the process of FIG. 2 after an active image sensing device structure has been formed.

FIG. 4 is a diagrammatic cross-sectional side view of an image sensor system being formed in accordance with the process of FIG. 2 after a bottom antireflection coating has been formed over an exposed surface of the active image sensing device structure of FIG. 3.

FIG. 5 is a diagrammatic cross-sectional side view of an image sensor system being formed in accordance with the process of FIG. 2 after a color filter array has been formed on the bottom antireflection coating of FIG. 4 and exposed portions of the bottom antireflection coating have been removed.

## DETAILED DESCRIPTION

In the following description, like reference numbers are used to identify like elements. Furthermore, the drawings are intended to illustrate major features of exemplary embodiments in a diagrammatic manner. The drawings are not intended to depict every feature of actual embodiments nor relative dimensions of the depicted elements, and are not drawn to scale.

Referring to FIG. 1, in one embodiment, an image sensor system 10 includes an active image sensing device structure 12, a color filter array 14, and a bottom antireflection coating (BARC) layer 16 disposed between a top surface of active image sensing device structure 12 and color filter array 14. Image sensor system 10 also includes a passivation layer 18 and a conventional micro lens array 20 that is formed over passivation layer 18.

Referring to FIGS. 2, 3, 4 and 5, and initially to FIGS. 2 and 3, image sensor system 10 may be formed as follows. An active image sensing device structure 12 initially is formed (step 32). Active image sensing device structure 12 may be a conventional CCD imaging device structure or a conventional CMOS imaging device structure. In general, active image sensing device structure 12 may include an array of pixels, each of which contains a light-sensing element (e.g., a p-i-n photodiode, an n+ to p-substrate photodiode, a virtual gate buried n-channel photodetector, or a photo-gate detector), and circuitry for driving light signals from the light-sensing elements to other process circuitry.

As shown in FIG. 3, in one embodiment, active image sensing device structure 12 includes a plurality of pixel transistors 34 that are formed on a substrate 36, a number of metallization interconnect levels 38 (not shown individually), and a final metallization level 40. Final metallization level 40 includes a bonding pad 42, a ground contact 44, and a pair of metallization contacts 46, 48. Final metallization level 40 also includes a polished oxide (e.g., silicon oxide) layer 50, a silicon nitride layer 52, and a number of tungsten-filled contact vias 54, 56, 58 extending through oxide and silicon nitride layers 50, 52 down to a respective contact 44–48. A Ti/TiN barrier (or liner) layer 65 may be deposited on the surfaces of contact vias 54–58 before the tungsten plugs are formed. A via 59 is formed

through oxide and silicon nitride layers 50, 52 to expose bonding pad 42. A pixel metallization 60, 62 may be formed over each of the tungsten plugs 56, 58 that are connected to metallization contacts 46, 48. Patterned n-type amorphous silicon layers 64, 66 are formed over the pixel metallizations 60, 62. An intrinsic amorphous silicon layer 68 is formed over n-type amorphous silicon layers 64, 66, and a p-type amorphous silicon layer 70 is formed over the intrinsic amorphous silicon layer 68. A transparent conductive layer 72 extends over p-type amorphous silicon layer 70 and contacts the tungsten plug connected to ground contact 44. An opaque metal layer 74 extends over a portion of transparent conductive layer 72 to bridge transparent conductive layer 72 at the ground contact perimeter, blocks light at pixel borders, and surrounds the pixel array.

As shown in FIG. 4, after active image sensing device structure 12 is formed (step 32; FIG. 2), a BARC layer 16 is deposited over an exposed surface of active image sensing device structure 12 (step 76; FIG. 2). In general, BARC layer 16 may be formed from any conventional BARC material, including a dyed organic film-forming BARC material or a light-absorbing polymeric film-forming BARC material. In some embodiments, BARC layer 16 preferably is substantially absorptive of radiation in the wavelength range used to pattern color filter array 14 and is substantially transmissive to radiation in the wavelength range to be imaged by image sensor system 10 (e.g., the visible radiation spectrum). BARC layer 16 may be formed from an organic film-forming material or a polymeric film-forming material. In one embodiment, BARC layer 16 is a photoresist-based antireflective coating that is substantially transmissive to radiation in a wavelength range of about 400 nm to about 700 nm (e.g., a Shipley AR2-600 antireflection coating, which is available from Shipley Company, L. L. C. of Marlborough, Mass., U.S.A.). In this embodiment, BARC layer 16 may be applied by a conventional spin-coater operating at 2000 rpm during deposition and at 4790 rpm during spreading; the resulting BARC layer 16 has a thickness of about 60 nm. After deposition, BARC layer 16 is exposed to a 60 second proximity bake at 205° C. on a DNS track.

In general, BARC layer 16 may have a thickness that is selected to improve the optical transmission characteristics of one or more colors of color filter array 14. In particular, the BARC layer thickness may be selected so that the peak transmission at one or more target radiation wavelengths is increased relative to device structures that do not include BARC layer 16. The target radiation wavelengths may correspond to the wavelengths of peak pixel sensitivity for each color of the color filter set of the completed image sensor system 10. The optical transmission characteristics for each color may be modeled based upon the refraction indices of BARC layer 16 and the other layers of image sensing device structure 12. The thicknesses of BARC layer 16 and the layers of color filter array 14 may be varied within specified thickness ranges until the peak transmissions for one or more of the target radiation wavelengths of the color filter set are optimized. In the illustrated embodiment, it has been discovered that a BARC layer thickness of approximately 60 nm improves the optical transmission characteristics for each of the colors of an RGB color filter array at the target radiation wavelengths of 620 nm for red, 540 nm for green, and 460 nm for blue. In general, the BARC layer thickness should be relatively thin (e.g., less than approximately 200 nm) so that portions of BARC layer 16 may be removed relatively easily to expose bonding pad 42 and other device structures during the BARC layer removal

US 6,765,276 B2

5

process step (described below in connection with process step 90 of FIG. 2).

Referring to FIG. 5, a patterned color filter array 14 is formed on BARC layer 16 (step 82; FIG. 2). BARC layer 16 provides a reliable adhesive surface for the color filter array 14 and, thereby, substantially eliminates lifting of the color filter array resist structures. Color filter array 14 may be a conventional color filter array that is formed from a plurality of colored photoresist structures that are arranged in a pattern of pixel size mosaics or pixel wide stripes. For example, color filter array 14 may be polymer color filter array that is formed by successive deposition of the colored photoresist layers of a particular color set (e.g., red/green/blue or cyan/magenta/yellow). A masking or etching process may be used to form a respective color filter at a selected pixel location. In general, a pixel color filter may be formed from a single polymer layer containing one or several dyes, or by several polymer layers, each of which contains one or more dyes. As shown in FIG. 1, the resulting color filter array 14 includes a distinct, spatially separated filter region 84, 86, 88 for each filter color (e.g., red, green and blue in the illustrated embodiment), each region 84, 86, 88 corresponding to a different color pixel of image sensor system 10. By this arrangement, light at different wavelengths may be sampled separately so that color-separated images may be formed.

As explained above, BARC layer 16 protects exposed areas of the active image sensing device structure 12 during formation of the color filter array 14 and, thereby, preserves the intrinsic transmission characteristics of the active image sensing device structure 12. For example, BARC layer 16 protects sensitive areas of active image sensing device structure 12 against degradation that otherwise might be caused by exposure to the developing solutions that are used to pattern the color filter array 14. The bottom antireflection coating also reduces degradation of metal structures (e.g., bonding pad 42) and pixel edges at the exposed surface of the active image sensing device structure 12. For example, BARC layer 16 reduces scumming and chemical reactions that otherwise might occur at such metal structures and pixel edges as a result of repeated exposure to color filter resist material and color filter developing solutions.

Next, exposed portions of BARC layer 16 are removed (step 90; FIG. 2). BARC layer 16 may be removed in a conventional plasma etch system (e.g., a LAM590 plasma etch system available from LAM Research Corporation of Fremont, Calif.). In one embodiment, a low-power buffered ash (e.g., a $He/O_2$ ash) may be used to remove BARC layer 16. The plasma etch process preferably removes BARC layer 16 at a substantially higher etch rate than the color filter array 14. It has been discovered that the process of removing portions of BARC layer 16 also improves the optical transmission characteristics of color filter array 14 by removing (or cleaning) portions of color filter array 14 that are stained during formation of color filter array 14. For example, during formation of an RGB color filter array, the array of filters for the first color (e.g., red) that is formed may be stained by the subsequent color resist processing steps that are used to form the filter arrays for the remaining colors (e.g., blue and green). In addition, the array of filters for the

6

second color (e.g., blue) that is formed may be stained by the subsequent color resist processing steps that are used to form the filter array for the remaining color (e.g., green). Such staining reduces the optical transmission through the stained color filter arrays. The process of removing portions of BARC layer 16, however, cleans the surfaces of the stained color filter arrays and, thereby, improves their optical transmission characteristics.

Additional structures, including passivation layer 18 and micro lens array 20, may be formed after the exposed portions of BARC layer 16 have been removed (step 92; FIG. 2). These additional structures may be formed in accordance with conventional device fabrication processes.

Other embodiments are within the scope of the claims.

What is claimed is:

1. An image sensor system, comprising:

an active image sensing device structure comprising an array of light sensing elements;

a color filter array comprising an array of color filters each disposed over a respective light sensing element, wherein light travels from each color filter to a respective light sensing element through a respective light transmission path substantially transmissive to radiation in a visible wavelength range; and

a bottom antireflection coating disposed in each light transmission path between the color filter array and the active image sensing device structure, wherein the bottom antireflection coating has a thickness less than approximately 200 nm.

2. The system of claim 1, wherein the bottom antireflection coating comprises a dyed organic film-forming material.

3. The system of claim 1, wherein the bottom antireflection coating comprises a light-absorbing polymeric film-forming material.

4. The system of claim 1, wherein the bottom antireflection coating has a thickness selected to improve an optical transmission characteristic of one or more colors of the color filter array.

5. The system of claim 1, wherein the bottom antireflection coating is substantially transmissive to radiation in a wavelength range of about 400 nm to about 700 nm.

6. The system of claim 1, wherein the color filter array comprises a plurality of colored photoresist structures.

7. The system of claim 1, wherein the bottom antireflection coating has a substantially higher plasma etch rate than the color filter array.

8. The system of claim 1, wherein the active image sensor device structure comprises a complementary metal-oxide-semiconductor (CMOS) image sensor.

9. The system of claim 1, wherein the bottom antireflection coating has a thickness of about 60 nm.

10. The system of claim 1, wherein the bottom antireflection coating is present only in regions directly under color filter array material.

11. The system of claim 1, wherein the color filter array is formed directly on bottom antireflection coating material.

* * * * *